LAGESEN, J.
*321 *334 The issue in this child custody appeal is whether the trial court had subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[1] Answering that question requires us to determine, as a matter of first impression in this state, what legal test governs the determination whether a child's absence from a putative "home state" is a "temporary absence" within the meaning of ORS 109.704(7), such that the time away is counted toward the child's residence in the putative home state. The question is a significant one, because it is pivotal to the issue of whether a particular court has subject matter jurisdiction over a custody dispute under the jurisdictional provision of the UCCJEA, ORS 109.741. And although the UCCJEA, a uniform act, is meant to be interpreted uniformly across jurisdictions, ORS 109.831,[2] the question is one that has divided appellate courts across the country. See Andrea Charlow, There's No Place Like Home: Temporary Absences in the UCCJEA Home State , 28 J. Am. Acad. Matrim Law 25 (2015) (identifying the different legal tests that appellate courts have adopted to determine whether an absence is a "temporary absence" under the UCCJEA). Having sought and received thoughtful supplemental briefing from both parties, we conclude that the "totality of the circumstances" test adopted by the majority of the jurisdictions to consider the question is the appropriate legal test to determine whether a child's absence from a putative UCCJEA home state is a "temporary absence." For reasons to be explained, we further conclude that the application of that test to the undisputed facts in this case means that the trial court ultimately was correct to conclude that it had subject matter jurisdiction over the parties' child custody dispute. We therefore affirm the judgments of the trial court.
I. BACKGROUND
We draw the facts from the record, as supplemented by materials judicially noticed on father's motion. Mother, *335 a United States citizen from Oregon, and father, a French national, were married in France in 2010. In March 2011, the parties came to Oregon to stay with mother's family shortly before mother gave birth to L in April of the same year. After L's birth, the parties hopscotched among Oregon, France, and Indonesia, staying no more than seven months in one place. The parties remained in Oregon until L was five or six months old, at which time they traveled to Aix-en-Provence, France, where they stayed for five months. They then returned to Oregon for three months. Next the family went to Bali, Indonesia, where mother's parents have a home in which they live half time. Parents and L stayed for two months and followed up with a trip to Paris, where they remained for seven months. They then returned to Bali, where they remained for a few days shy of six months. Then, on September 27, 2013, mother flew from Bali to the United States to see friends and family. Father remained in Bali but relocated to Singapore shortly thereafter. The parties had been contemplating moving to Singapore, where father had been pursuing employment, but were also contemplating a move to New York.
Around that same time, mother decided to separate from father and did not return to *322 Bali. On or around November 10, 2013, father traveled to the United States from Bali. Two days later, on November 12, 2013, mother petitioned the Lane County Circuit Court for a judgment of unlimited legal separation.
Father responded initially by filing a child custody action in a French court. The parties negotiated a settlement under which they stipulated that Oregon had jurisdiction under the UCCJEA to adjudicate issues regarding L's custody, and father agreed to dismiss the custody proceeding that he had filed in France. Among other things, the parties agreed that neither would invoke the jurisdiction of a court outside of Oregon to resolve future issues relating to L's custody. Based on the parties' agreement, the trial court entered a general judgment of unlimited legal separation. That judgment, which was entered in January 2014, resolved the issues related to L's custody and incorporated the parties' agreed-upon parenting plan.
*336 Several months later, both parties had second thoughts about their agreement. Mother petitioned the trial court to modify the agreement, alleging that father's drug use and other conduct were making the arrangement unworkable. Father-who, contrary to the parties' agreement, had initiated a new child custody proceeding in France and filed an international child abduction case in the United States District Court of Oregon, alleging violations of The Hague Convention-moved the trial court under ORCP 71 B(1)(d) to vacate the judgment of unlimited legal separation (at least insofar as it resolved the child custody issues) on the ground that the court lacked subject matter jurisdiction under the UCCJEA. Father contended that France, not Oregon, had jurisdiction under the UCCJEA, submitting a declaration in support of that argument. Mother opposed the motion, arguing that Oregon, not France, had jurisdiction under the UCCJEA-a contention that she supported with her own affidavit.
The trial court denied the motion. Based on the arguments and evidence presented by the parties, the court determined that it had subject matter jurisdiction under the UCCJEA at the time that it had entered the general judgment of unlimited legal separation:
"The General Judgment was filed on December 23, 2013, and entered on January 2, 2014. At that time, no state or country had 'home state' jurisdiction as that term is defined in the UCCJEA. Oregon had jurisdiction pursuant to ORS 109.741(1)(b) and the parties, both of whom were represented by counsel, stipulated to the necessary facts for the Court's jurisdiction."
The court thereafter entered a supplemental judgment awarding mother attorney fees incurred in responding to father's motion. A short while later, the trial court found father to be in contempt for violating the parenting plan by using marijuana or hashish while L was in his care and for filing the second child custody proceeding in France. The court further found that father's contemptuous conduct caused mother to incur $16,038.78 in damages and entered a supplemental judgment for that amount. The court subsequently ordered father to pay the attorney fees mother incurred to prosecute the contempt.
*337 Father has appealed. He reiterates his position that the judgment of separation is void because the trial court lacked subject matter jurisdiction under the UCCJEA. Now, however, father takes the position that Indonesia, rather than Oregon or France, had jurisdiction under the UCCJEA. Consequently, according to father, the court erred both when it denied father's motion to vacate the judgment, and when it held father in contempt for violating the terms of that judgment. In father's view, because the trial court lacked subject matter jurisdiction, the custody provisions of the general judgment of separation must be set aside, and so must the supplemental judgment of contempt.
Mother responds that father, in effect, waived his ability to challenge the court's jurisdiction when he stipulated to it, or should be estopped from challenging it. Mother also contends that the allegations in her initial petition and certain of the parties' stipulations demonstrate that the court nonetheless correctly concluded that it had jurisdiction under the UCCJEA at the time that it made the initial custody determination regarding L.
*323 II. STANDARD OF REVIEW
Father's core contention is that the trial court lacked jurisdiction under the UCCJEA to make custody decisions about L at the time that it entered the general judgment of unlimited legal separation, and that the court therefore erred by denying his motion to vacate the judgment and by holding him in contempt for violating the terms of that judgment. We review for legal error the trial court's determination that it had subject matter jurisdiction under the UCCJEA. Campbell v. Tardio , 261 Or. App. 78, 80, 323 P.3d 317 (2014).
III. ANALYSIS
A. Estoppel
We start by considering-and rejecting-mother's estoppel argument. Mother's position is not unsympathetic. Father's position on what state has subject matter jurisdiction has been in flux for the entirety of this litigation. He took the position that Oregon has jurisdiction at the time of the *338 general judgment. On his motion to vacate that judgment, he took the position that France has jurisdiction. Now, on appeal from denial of that motion, he takes the position that Indonesia has jurisdiction. Needless to say, father's changing positions have delayed resolution of the jurisdictional issue.
Nonetheless, Oregon law with respect to subject matter jurisdiction generally, and with respect to the UCCJEA specifically, is unequivocal that subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel and may be raised at any time. Carey v. Lincoln Loan Co. , 342 Or. 530, 534 n. 2, 157 P.3d 775 (2007) ("Judicial estoppel generally does not prevent a party to a case from challenging a court's subject matter jurisdiction, even after the party has invoked or consented to the jurisdiction of the court."); Wink v. Marshall , 237 Or. 589, 592, 392 P.2d 768 (1964) ("Jurisdiction cannot be conferred by the parties by consent, nor can the want of jurisdiction be remedied by waiver, or by estoppel."); Shepard v. Lopez-Barcenas , 200 Or. App. 692, 697, 116 P.3d 254, rev. den. , 339 Or. 475, 124 P.3d 1248 (2005) ( "[A] party's consent to the trial court's jurisdiction over the initial determination of custody under the UCCJEA has no effect if, indeed, the court lacked jurisdiction to make that determination."); see also Medill and Medill , 179 Or. App. 630, 645, 40 P.3d 1087 (2002) (same). For that reason, we must reject mother's estoppel argument.
B. Jurisdiction
We turn to the question of whether the trial court had subject matter jurisdiction over this dispute under the UCCJEA. Where, as here, multiple states[3] potentially have jurisdiction to adjudicate a child custody dispute, ORS 109.741[4] governs an Oregon court's determination as to whether it has subject matter jurisdiction. Dept. of Human Services v. R. M. S. , 280 Or. App. 807, 383 P.3d 417 (2016) ; UCCJEA § 201 comment, 9 ULA 671, 673 (1997) ("It should *339 also be noted that since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective."). Under ORS 109.741(1)(a), if Oregon is the child's "home state," as that term is defined by ORS 109.704(7), then Oregon courts have "home state" jurisdiction over the dispute. A state is a child's "home state" if, as of the date of the commencement of the custody proceeding, the child has lived in the state for six consecutive months, inclusive of "temporary absence[s]" of the child or either parent from the state:
" 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months *324 of age, 'home state' means the state in which the child lived from birth with any of the persons mentioned. Any temporary absence of any of the mentioned persons is part of the period."
ORS 109.704(7).
Alternatively, if Oregon is not a child's home state, it nevertheless may have jurisdiction under ORS 109.741(1)(b) to (d), which confer jurisdiction on a state that is not a home state in three circumstances. One of those circumstances is when a child and a parent have a sufficient connection to the state. Specifically, ORS 109.741(1)(b) provides that a state has "significant connection" jurisdiction if the child has no home state, the child and one parent have a "significant connection" to the state, and there is "substantial evidence" in the state about "the child's care, protection, training and personal relationships." ORS 109.741(1)(b).
In this case, it is undisputed that Oregon was not L's home state as of the date that mother filed this proceeding and that Oregon, therefore, does not have "home state" jurisdiction under ORS 109.741(1)(a). The trial court nonetheless determined that it had "significant connection" jurisdiction under ORS 109.741(1)(b), concluding that L had no home state, but that mother and L have a significant connection to Oregon and that there is substantial evidence in *340 Oregon about L's "care, protection, training and personal relationships."
Father assigns error to that jurisdictional determination, contending that it is wrong in two different respects. First, father contests the trial court's determination that L had no home state as of November 12, 2013. In an argument that he did not make below, father contends that Indonesia was L's home state as of the date mother filed the petition in circuit court. Although it is undisputed that L left Indonesia with mother before they had been there six months, father asserts that L's time in the United States after mother left Bali qualifies as a "temporary absence" from Indonesia within the meaning of ORS 109.704(7), such that that time counts in assessing whether L had lived in Indonesia for the requisite six consecutive months immediately before mother's initiation of the custody proceeding. Second, father asserts that, even if L had no home state as of November 12, 2013, the evidence presented by mother was insufficient to establish either that L had a significant connection to Oregon or that substantial evidence exists in Oregon about L's "care, protection, training and personal relationships." For that additional reason, according to father, the trial court erred when it determined that it had "significant connection" jurisdiction under ORS 109.741(1)(b).
Mother responds that the trial court correctly concluded that L had no home state at the time that she initiated this proceeding and, in particular, correctly rejected father's assertions that L was "temporarily absent" from France or Bali, the putative home states that father has identified. She further contends that the evidence that she submitted in response to father's motion to vacate the judgment was sufficient to support the trial court's determination that L and mother have a significant connection to Oregon and that Oregon has substantial evidence about L's "care, protection, training and personal relationships."
Thus, as framed by the parties, this appeal presents two issues: (1) Was Indonesia L's home state when mother initiated this proceeding? (2) If not, did the trial court correctly conclude that L had a significant connection to Oregon? We address those issues in turn.
*341 1. Home state
As the parties both recognize, whether Indonesia was L's home state at the time that mother initiated this proceeding turns on whether L's departure from Bali with mother immediately preceding the initiation of this proceeding was a "temporary absence" from Indonesia within the meaning of ORS 109.704(7). If so, then that time is counted as if L were in Indonesia, making L's stay there long enough to qualify Indonesia as L's home state (provided that L's time in Indonesia was not itself a "temporary absence" from another place that qualified as a home state, in which case that place would remain L's home state).
*325 To answer that question, we must decide what legal test governs the determination of whether an absence is a "temporary absence" under the UCCJEA. That term is not defined within the UCCJEA and, as the parties' supplemental briefing has illuminated for us, appellate courts in UCCJEA jurisdictions have adopted three different tests to determine whether an absence is a "temporary absence" under the UCCJEA.[5] Those tests are (1) the duration test; (2) the intent test; and (3) the totality of the circumstances test. Charlow, 28 J. Am. Acad. Matrim Law at 30-36.
Under the duration test, a court determines whether an absence is temporary by looking exclusively at its duration. Under it, short absences are treated as temporary, and longer ones are not. See, e.g. , In re Marriage of Arulpragasam and Eisele , 304 Ill.App.3d 139, 237 Ill.Dec. 470, 709 N.E.2d 725, 735 (1999) ; Charlow, 28 J. Am. Acad. Matrim Law at 30-31. The test has the advantage of being objective and relatively bright-line (although *342 courts have not settled on a firm rule of how long an absence can be before it becomes an absence that is not temporary as a matter of law). However, it does not account for the fact that some families may live away from their homes for lengthy periods of time without necessarily viewing themselves as establishing a new home. It also does not account for the fact that some short absences may not be temporary, but may simply be the start of a permanent relocation.
Under the intent test, courts consider the purpose of an absence to assess whether it should be temporary. Charlow, 28 J. Am. Acad. Matrim Law at 31-33. Although this test takes into account the realities of what a child's parents may have been intending with respect to a particular absence, the test is problematic where parents may have had differing intentions about the nature of an absence. In such circumstances, there may be no principled way to say that one parent's intent should control over the other parent's intent. Additionally, the test can be difficult to apply because parties' intentions may change over time. See generally id .
The final test is the totality of the circumstances test. As the name indicates, the test looks at all the surrounding circumstances of a purported temporary absence, including intent of the parties and duration of absence, to assess whether the absence should be treated as a temporary departure from a putative home state. From what we can tell, most jurisdictions that have considered the issue have embraced this approach. See Norris v. Norris , 345 P.3d 924, 929 (Alaska 2015) ; Garba v. Ndiaye , 227 Md. App. 162, 172-74, 132 A.3d 908, cert. den. , 448 Md 30, 136 A.3d 817 (2016) ; Charlow, 28 J. Am. Acad. Matrim Law at 34 (explaining that "the 'totality of the circumstances' test is commonly used" to assess whether an absence is temporary under the UCCJEA).
Having considered the various approaches, we too adopt the totality of the circumstances approach. We do so for three reasons. First, it appears to be the test most commonly used by other UCCJEA states. Adopting it, therefore, is consistent with the directive in ORS 109.831 that the UCCJEA
*343 should be construed to promote uniformity. Second, as the facts of this case illustrate, families lead their lives in very different ways. The totality of the circumstances test seems best suited to account for the wide variations in family living arrangements, and the fact that sometimes parents may have conflicting or changing intentions. Domestic relations are not bright-line prospects, and are not particularly *326 susceptible to bright-line rules that disregard the complex realities of such relations. Third, the test is consistent with our decision in Shepard . Although in that case we focused primarily on one parent's intentions regarding the absence, we also noted that the length of the absence was approximately three months, and that the mother had always intended to return to Mexico. 200 Or. App. at 697, 116 P.3d 254. Thus, although we did not announce what legal standard governed in that case, we also did not focus our attention exclusively on either duration or intent. In view of that, we think that the totality of the circumstances approach is the most consistent with our past decisions.
Applying that approach to the parties' circumstances in this case, we conclude that L's absence from Indonesia after his departure with mother was not a "temporary absence" from Indonesia for purposes of the UCCJEA under this family's circumstances, when considered in their totality. First, the family's history reflects an open-ended residential history. That is, the parties lived sequentially in different places without firm plans either to stay in one place for a particular time, or about where to live next. Second, at the time of L's departure from Indonesia with mother, the family was planning to relocate to Singapore, and there does not appear to have been any concrete plans for mother and L to return to Indonesia in particular. Third, as father repeatedly emphasized below, the parties intended their time in Indonesia to be temporary. In view of all those circumstances, when L and mother left Indonesia, they were not temporarily absent from Indonesia for purposes of the UCCJEA. Although it may be the case that the parties may have intended that the separation of the family would be temporary at the time that mother and L left-father certainly intended as much and mother had not told father that she intended to separate from him-that does not equate to the conclusion that L's absence from Indonesia was *344 temporary, given the totality of the family's circumstances and, in particular, its open-ended residential history.
Consequently, Indonesia did not become L's home state; it is undisputed that L did not live there for the requisite six months if his time away does not qualify as a "temporary absence" under the UCCJEA. We have concluded that L was not temporarily absent from Indonesia. Thus, the trial court was correct to conclude that L did not have a home state when mother initiated this proceeding.
2. Significant connection
That leaves the question of whether the trial court correctly concluded that it had "significant connection" jurisdiction under ORS 109.741(1)(b). To recall, that statutory provision provides that a state has "significant connection" jurisdiction if the child has no home state, the child and one parent have a "significant connection" to the state, and there is "substantial evidence" in the state about "the child's care, protection, training and personal relationships." ORS 109.741(1)(b). Although father argues otherwise, the evidence submitted by mother in response to father's motion to vacate is sufficient to support the trial court's determination that mother and L have a "significant connection" to Oregon and that Oregon has the "substantial evidence" about L required by ORS 109.741(1)(b). That evidence shows that mother is from Eugene, L was born here and has a doctor here, and that L's maternal grandparents live here six months out of the year and have spent much time with L, making them significant sources of information about L.
The trial court therefore correctly concluded that it had subject matter jurisdiction over the parties' child custody dispute under ORS 109.741(1)(b). As a result, the court correctly denied father's motion to set aside the custody provisions of the stipulated judgment of separation, and also had jurisdiction to hold father in contempt for violating those provisions.
Affirmed.

The UCCJEA is codified in Oregon at ORS 109.701 to 109.834. ORS 109.701 ("ORS 109.701 to 109.834 may be cited as the Uniform Child Custody Jurisdiction and Enforcement Act.").

ORS 109.831 provides, "In applying and construing ORS 109.701 to 109.834, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."

The UCCJEA generally requires that foreign countries be treated as states, directing that "[a] court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying ORS 109.701 to 109.771." ORS 109.714(1).

ORS 109.741 codifies section 201 of the UCCJEA.

As noted, after oral argument and submission of this case, we requested supplemental briefing from the parties on what legal test applies to the determination of whether an absence from an asserted home state is a "temporary absence" within the meaning of ORS 109.741. We did so because that issue is the central issue on appeal, there is a division on the issue across jurisdictions that have adopted the UCCJEA, even though the UCCJEA is a uniform act intended to be applied uniformly, and because this court has never addressed what legal standard applies, even though twice we have assessed whether an absence qualifies as a "temporary absence" without articulating the applicable legal standard. Dept. of Human Services v. M. H. , 256 Or. App. 306, 300 P.3d 1262 (2013) ; Shepard , 200 Or. App. at 696, 116 P.3d 254. In both M. H. and Shepard , the parties did not raise the issue of what legal standard applied, but appear to have treated the "temporary absence" question as a pure question of fact. As a result, this court did not identify the legal test for determining whether an absence is temporary.