HADLOCK, P. J.
*60 Mother appeals a judgment in which the juvenile court asserted dependency jurisdiction over her child, arguing that the court erred in determining that it had subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[1] As explained below, we conclude that the juvenile court erred when it ruled that it had "temporary emergency jurisdiction" under the UCCJEA and that, in the circumstances present here, it would be inappropriate for us to determine in the first instance whether the court had jurisdiction under another UCCJEA provision. Accordingly, we vacate the judgment and remand for further proceedings.
To provide background for the discussion that follows, we briefly summarize pertinent provisions of the UCCJEA, which governs subject matter jurisdiction in juvenile dependency proceedings. See ORS 419B.803(2) ("Juvenile court jurisdiction is subject to ORS 109.701 to ORS 109.834"); ORS 109.701 (" ORS 109.701 to 109.834 may be cited as the [UCCJEA]"). The general jurisdiction provision *76 of the UCCJEA describes several circumstances in which an Oregon court has subject matter jurisdiction in a dependency proceeding, only some of which are potentially at issue here. One of those circumstances exists when Oregon is the child's "home state." ORS 109.741(1)(a). The "home state" is defined in ORS 109.704(7) as follows:
" 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *** Any temporary absence of any of the mentioned persons is part of the period."[2]
A second circumstance in which jurisdiction exists in Oregon is when no court of another state either is the child's "home state" or has jurisdiction for certain other reasons. ORS 109.741(1)(d).
*61 In addition, an Oregon court may exercise "temporary emergency jurisdiction" under the UCCJEA when "it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." ORS 109.751(1). Temporary emergency jurisdiction is an "extraordinary jurisdiction reserved for extraordinary circumstances." Dept. of Human Services v. T. F. , 292 Or. App. 356, 360, 425 P.3d 480 (2018) (quoting Uniform Child Custody Jurisdiction and Enforcement Act § 204 comment, 9 ULA 649, 677 (1997)).
The pertinent facts are undisputed for purposes of the UCCJEA analysis except for the contested issues that we describe below.[3] Child entered shelter care in Oregon in early September 2018, when she was three years old. A Department of Human Services (DHS) caseworker filed a dependency petition the next day, alleging that child was within the juvenile court's dependency jurisdiction based on conditions and circumstances including mother's substance abuse, criminal activities, and neglect of child, as well as father's incarceration and unavailability as a custodial resource. A shelter care order was entered and counsel appointed for child and the parents. The record indicates that child's grandparents participated by telephone at the shelter hearing.
Several days later, child's maternal grandparents sought an emergency hearing in the Oregon juvenile court "for the return of our granddaughter, [child]." They asserted that mother had signed over "legal custody/guardianship" of child in August 2017. In support of that contention, they attached a handwritten document dated August 16, 2017, signed by mother and notarized in New York, in which mother purported to "give guardianship/custody to the grandparents of [child] * * * until [mother was] able to take custody/guardianship back * * *." At around the same time, maternal grandparents petitioned a New York court to enforce the August 2017 "custody/guardianship" document; in that petition, grandparents asserted that Oregon is not child's home state.
*62 At some point (the timing is not reflected in the record), mother moved to dismiss the dependency case, asserting that the Oregon court lacked subject matter jurisdiction under the UCCJEA. A hearing was held in October 2018 on that motion, and maternal grandparents and father all participated by telephone.
Mother explained at the hearing that she had brought child to Oregon in early April 2018. Before then, child had lived with maternal grandparents for about nine months at their home in Virginia; before that, child had lived with mother in Florida. Mother testified that she had brought child to Oregon only for a temporary visit, to see whether she and child eventually would move to this state. However, when mother and child had been in Oregon for a few weeks, an incident occurred in which child came to DHS's attention. Knowing that DHS was performing an "assessment investigation" regarding child and her circumstances, mother left for California in early June, taking child with her. At some point after that, child came to the attention *77 of California authorities and was taken from mother in early September 2018. Child was then returned to Oregon and put in DHS's care.
Mother testified at the October 2018 hearing on her motion to dismiss that, if the Oregon dependency case were dismissed, maternal grandparents would promptly fly to Oregon to retrieve child. Mother then would enter treatment while child stayed with mother's family. When asked if she had any intention of revoking her delegation of custody to maternal grandparents, mother responded "as soon as I am able to-I'm able to support my child, of course." She also asserted that she believed that the forms she had signed, purporting to delegate custody to grandparents in August 2017, were valid for six months.
Maternal grandfather also testified at the hearing. He said that the understanding in April 2018 had been that mother would take child on vacation for a few weeks and then would return child to grandparents' care in Virginia. He said that, if the case were dismissed, he and his wife would come to Oregon to retrieve child.
*63 At the close of the hearing, mother argued that there was no basis for emergency jurisdiction under the UCCJEA because child would not be at risk of harm if the case were dismissed, as she then would return to grandparents' care. Mother also asserted that child's home state was Virginia, but she did not explain why. Father agreed with mother that Virginia was the home state, observing that child had lived there with her grandparents.
In response, DHS did not argue for temporary emergency jurisdiction, but argued that Oregon had jurisdiction under the UCCJEA "because no Court of any other state would have jurisdiction" under the uniform act. The court and the state's lawyer listed states that would not be child's home state (New York, Oregon, and Florida), and the court then said, "Maybe Virginia." The state's lawyer responded:
"Perhaps, Virginia but *** I know mom didn't sign-mom had intent to *** return to Virginia herself as a caregiver and you know there wasn't *** the move to Southern California to get into treatment was-really showed her intent that you know she wasn't really in a hurry to get back to Virginia but she-you know I think for a 90 day period at least she was going to be with the child in Southern California."
In the end, the state took the position that Virginia was not the child's home state.
The juvenile court ruled that it had temporary emergency jurisdiction under the circumstances, focusing on its concern that maternal grandparents would not necessarily be able to keep child safe, particularly if mother decided to-again-remove child from their care: "I am concerned about grandparents while I know they have every best intention at heart but they demonstrated an inability to protect [child] by simply letting her come out here and then they couldn't get her back." In response to assertions by grandfather that mother was "not going to get custody of her kid" if child was returned to grandparents in Virginia, the court also noted that-if the case was in Oregon-the court "would make [grandparents] establish that [they] have a custodial relationship first before [the court] would let [them] do any of that." The court remarked further that it did not know Virginia law, but would not be persuaded *64 that child was safe "absent [a] custody order in Virginia that allows [grandparents] to do that," apparently referring to grandfather's suggestion that he would not allow mother to remove child from grandparents' care.
Based on its determination that it had temporary emergency jurisdiction under the UCCJEA, the juvenile court denied mother's motion to dismiss. The same day that the court entered its written order denying the motion, grandparents notified the Oregon court that they had filed a petition for a writ of mandamus in the Supreme Court of Virginia, seeking return of child to their care. Grandparents asserted that Virginia is child's home state because grandparents have a power of attorney, are psychological parents of child, and have physical and legal custody rights. The petition to the Virginia Supreme Court seeks "emergency full custody rights of [child]." The record does not reflect what *78 steps, if any, the Virginia court may have taken on that petition.
DHS filed an amended dependency petition on October 31, 2018. At the subsequent dependency hearing, mother renewed her motion to dismiss for lack of subject matter jurisdiction under the UCCJEA. The juvenile court again denied the dismissal motion. In speaking with grandparents by phone at the hearing, the court noted that it did not "see that you've established a third party psychological parents in a custody matter in Virginia." The court stated that it was ready to facilitate child's return to family members on the east coast "as soon as I find out someone's a legal guardian or has custody and can protect." The court subsequently took dependency jurisdiction over child. Mother appeals the resulting judgment.
On appeal, mother first argues that the juvenile court erred when it determined that it had temporary emergency jurisdiction under the UCCJEA because the record includes no evidence that child would be at immediate risk of harm if she was returned to mother's care. In response, DHS acknowledges that the record does not support temporary emergency jurisdiction.
Mother also argues that Virginia-not Oregon-had UCCJEA jurisdiction because Oregon was not child's home *65 state and Virginia has jurisdiction "because [child] lived there with grandparents, who cared for her and acted as her parents" for about nine months, ending in mid-April 2018, five months before DHS filed the dependency petition. DHS disagrees. It argues on appeal, as it did below, that the Oregon court had UCCJEA jurisdiction under ORS 109.741(1)(d) because no other state had jurisdiction. In particular, DHS contends that Virginia was not child's home state.
We begin by addressing the basis on which the juvenile court ruled-its determination that it had temporary emergency jurisdiction under ORS 109.751. We agree with the parties that the juvenile court erred in that determination; our review of the record reveals no basis for a finding that child would be "at immediate risk of harm" if returned to mother's care. State v. L. P. L. O. , 280 Or. App. 292, 308, 381 P.3d 846 (2016). DHS also acknowledges that Oregon is not child's home state because child had not been in Oregon for the requisite six months under ORS 109.704(7) (defining "home state").
The question remains whether, on this record, we can determine either that the juvenile court had UCCJEA jurisdiction under another provision, as DHS contends, or that it did not have jurisdiction at all, as mother argues. For the following reasons, we do not make either of those determinations, but leave the questions open for the juvenile court to address on remand.
The parties' arguments implicate the UCCJEA provision that generally applies when a state is not the child's home state, but no other state has jurisdiction, either. ORS 109.741(1)(d). Stated more precisely, ORS 109.741(1)(d) provides that Oregon has subject matter jurisdiction if "[n]o court of any other state would have jurisdiction under the criteria specified" in the other subsections of ORS 109.741(1). Here, Virginia is the only other state that has been identified as potentially having UCCJEA jurisdiction, and only under the criteria set out in ORS 109.741(1)(a).[4] That *66 provision itself specifies two ways in which a state would have UCCJEA jurisdiction. The first is if the state "is the home state of the child on the date of the commencement of the proceeding," here, the dependency proceeding. ORS 109.741(1)(a). The second is if the state "was the home state of the child within six months before the commencement of the proceeding and the child is absent from [the] state but a parent or person acting as a parent continues to live in [the] state." Id . Mother contends that Virginia would have jurisdiction under both of those sets of criteria; DHS disagrees.
We first consider whether this record establishes-as a matter of law-either that Virginia was child's "home state" on the date *79 the dependency proceeding commenced or that it was not. Again, "home state" is defined, as pertinent here, to be "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." ORS 109.704(7) (emphasis added). Importantly, the "home state" definition also specifies that "[a]ny temporary absence of any of the mentioned persons is part of the [six month] period." Id . In this case, it is undisputed that mother took child from Virginia in mid-April 2018 and that the Oregon dependency petition was filed in early September 2018, less than six months later. Mother contends that Virginia was child's home state on that early September date because (1) child had lived in Virginia with grandparents on a date six months earlier (and had been living with them in Virginia for nine months), (2) child's subsequent absence from Virginia (with mother in Oregon, then in California) was "temporary," and (3) grandparents were "acting as [child's] parent[s]" while she lived in Virginia. Under ORS 109.704(7), all three of those things would need to be true for Virginia to have been child's home state when the dependency petition was filed.
The first of the three points is undisputed; there is no material disagreement about the pertinent dates. On the second point, DHS acknowledges mother's testimony that she had intended child's absence from Virginia to be only temporary. DHS asserts, however, that mother's actions in "remain[ing] in Oregon for almost two months and then *67 fle[eing] to California, where [child] was located three months later" are inconsistent with her testimony.
In our view, DHS's argument about mother's allegedly "inconsistent" actions shows why we cannot resolve, on this record, whether child's absence from Virginia was only "temporary." To determine whether a child's absence from a state was temporary under the UCCJEA, Oregon uses a "totality of the circumstances" test, which "looks at all the surrounding circumstances of a purported temporary absence, including intent of the parties and duration of absence, to assess whether the absence should be treated as a temporary departure from a putative home state." Schwartz and Battini , 289 Or. App. 332, 342-43, 410 P.3d 319 (2017). Here, the record includes evidence from which reasonable fact-finders could reach different conclusions regarding the parties' intent and the significance of other circumstances bearing on any decision about whether child's absence from Virginia was "temporary" for purposes of the UCCJEA. And, because the juvenile court ruled only (and incorrectly) that it had temporary emergency jurisdiction under the UCCJEA, it did not resolve whether child's absence from Virginia was temporary for the purposes of other UCCJEA provisions. Accordingly, that fact-bound question remains for the juvenile court to address in the first instance on remand.
We next address the third prong of the "home state" test as it would apply here-whether grandparents were "acting as [child's] parent[s]" when she lived in Virginia. In a single sentence in her reply brief, mother asserts that grandparents "meet the definition of 'a person acting as a parent' because they (1) had physical custody of [child] for that 9-month period [in Florida] and (2) have a right to legal custody of [child] under Virginia law," citing a Virginia statute stating that a court may award custody to a person other than a parent under certain circumstances.
We decline to analyze the merits of that argument because it is not sufficiently developed for our review. The UCCJEA defines "person acting as a parent" to mean a person who has had physical custody of a child for a certain specified amount of time and who "[h]as been awarded legal custody by a court or claims a right to legal custody *68 under the law of this state." ORS 109.704(13)(b) (emphasis added). We have found no Oregon cases shedding light on what it means for a person to "claim[ ] a right to legal custody" for purposes of the UCCJEA. Neither mother nor DHS has expressed a view on what the word "claims" means in that statute. Nor has either party expressed an opinion on whether the documents that maternal grandparents filed in Oregon and Virginia courts establish that grandparents have "claim[ed] a right to legal custody" or whether any factual questions *80 may still need to be resolved to answer that question.[5] Accordingly, we decline to address the "acting as a parent" issue further, and we express no opinion on the meaning of the ORS 109.704(13) definition of "[p]erson acting as a parent" or how that definition might apply in this case.
In short, we cannot resolve either the "temporary absence" or the "acting as a parent" question in this appeal. Those questions remain for the juvenile court to address, in the first instance, if they arise on remand.
We turn to the second basis on which mother argues that Virginia would have UCCJEA jurisdiction under the ORS 109.741(1)(a) criteria-that Virginia "was the home state of the child within six months before the commencement of the proceeding and the child is absent from [Virginia] but a parent or person acting as a parent continues to live in [Virginia]." That argument implicates the second question discussed above, that is, whether maternal grandparents were acting as child's parent, for purposes of ORS 109.704(13), when she lived with them in Virginia. As explained above, we cannot resolve that question on this record.
To sum up: The juvenile court erred when it ruled that it had temporary emergency jurisdiction under the UCCJEA. We cannot determine as a matter of law, on appeal, whether the juvenile court may have had jurisdiction *69 under another UCCJEA provision, as DHS advocated below. Accordingly, we vacate the judgment and remand for further proceedings. See Dept. of Human Service v. R. M. S. , 280 Or. App. 807, 810-11, 383 P.3d 417 (2016) (taking that approach under analogous circumstances).
Vacated and remanded.

The UCCJEA is codified in Oregon at ORS 109.701 to 109.834, ORS 109.701, and it applies in juvenile dependency proceedings. ORS 419B.803(2).

The definition of "child custody proceeding" includes juvenile dependency proceedings. ORS 109.704(4).

Although we have discretion to review de novo, neither party has requested it, and, as we will describe below, the record is not sufficiently developed for any such review.

The parties appear to agree that Virginia would not have jurisdiction under the criteria specified in ORS 109.741(1)(b) or (c). We note that Virginia has adopted the UCCJEA and its analog to ORS 109.741(1) -Va.Code Ann. § 20-146.12(A)(1) -is substantively identical to the Oregon provision.

Indeed, neither party has addressed the significance, if any, of the juvenile court's observation that maternal grandparents had not "established a third party psychological parents in a custody matter in Virginia" or the court's assertion that it "would make [grandparents] establish that [they] have a custodial relationship first" before the court would allow grandparents to assert custodial rights over child that would trump mother's.