No. 963				November 13, 2025				661

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of J. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. P.,
*Appellant.*

Clackamas County Circuit Court
21JU01658; A185917

Susie L. Norby, Judge.

Argued and submitted June 18, 2025.

Kyle Sessions Vazquez, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Erin K. Galli, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Joyce, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

In this juvenile dependency case, father appeals from a corrected judgment of jurisdiction and disposition concerning his child J that was entered on remand from *Dept. of Human Services v. M. P.*, 328 Or App 502, 527, 537 P3d 593 (2023) (*M. P. I*). Father raises a total of nine assignments of error, challenging the juvenile court's determinations that it had subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and, ultimately, the court's assertion of dependency jurisdiction. Father argues, among other things, that, based on our vacation of the jurisdiction and disposition judgment entered in July 2022 in *M. P. I*, that judgment was void and the court lacked authority to merely correct and re-enter it. Father further argues that, to the extent that the July 2022 jurisdiction and disposition judgment was not void as a result of our decision in *M. P. I*, we nonetheless decided the "home state" jurisdiction question, precluding any litigation of that issue and questions underlying it on remand. Those underlying questions include whether time that J was away from Oregon constituted, under the UCCJEA, a "temporary absence," and father further argues that, to the extent our holding in *M. P. I* allowed the juvenile court to consider that question, it erred in concluding that the Oregon Department of Human Services (ODHS) had proved that it was. Finally, father argues that, because the July 2022 jurisdiction judgment was void as a result of our decision in *M. P. I*, the juvenile court on remand was required to determine whether ODHS proved, at the time of remand, that J was exposed to a current, non-speculative threat of serious loss or injury, once it determined that it had subject matter jurisdiction, and ODHS failed to present evidence to establish jurisdiction at that time.

We conclude that (1) the June 2022 jurisdiction and disposition judgment was not void as a result of our decision in *M. P. I*; (2) the questions before the juvenile court on remand were whether there was any basis for subject matter jurisdiction in the Oregon court under the UCCJEA—including "home state jurisdiction"—based on our determination in *M. P. I* that the dependency proceeding commenced with the petition filing in March 2022; (3) the juvenile court

correctly determined that J's time away from Oregon was a "temporary absence" under the UCCJEA such that Oregon had home state jurisdiction when it adjudicated the petition and entered the jurisdiction and disposition judgment in June and July 2022; and (4) because the juvenile court had UCCJEA subject matter jurisdiction in 2022 when it adjudicated the dependency petition and entered the jurisdiction and disposition judgment, it was not required to determine anew on remand whether ODHS had proved a basis for dependency jurisdiction. Accordingly, we affirm.

## I.   HISTORICAL AND PROCEDURAL FACTS

Absent *de novo* review, which no party has requested and we decline to engage in here,[1] we are generally bound by the juvenile court's findings of historical fact if there is any evidence in the record to support them. *Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012). "Where findings on disputed issues of fact are not made but there is evidence supporting more than one possible factual conclusion, we presume that the juvenile court decided the facts consistently with its ultimate legal conclusion." *Id.* at 345 (internal quotation marks omitted). We state the historical facts in accordance with those standards.

ODHS became involved with father's family in February 2021 after J, then age eight, reported that an older sibling had been sexually abusing him. In consultation with ODHS, mother scheduled an appointment for a forensic evaluation of J with the Children's Center a few weeks later, in March 2021. However, mother and J did not appear for the appointment.

Instead, mother flew with J and two of J's siblings, IV and IZ (the sibling alleged to have sexually abused J) from Oregon to El Salvador the week before the scheduled appointment, on March 9, 2021. They took luggage and

---

[1] *See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."); ORAP 5.40(8)(c) (providing for the exercise of that discretion only in "exceptional cases"); ORAP 5.40(8)(d) (identifying nonexclusive considerations that may be relevant to our decision whether to exercise *de novo* review).

clothes with them, but left furniture, their phones, food, and other items in the apartment where they had been residing, and mother left her vehicle parked outside the apartment. Mother did not notify the apartment manager that she was moving out, and she did not withdraw J from school. In addition, mother left another of her adolescent children, K, at the apartment without telling him they were leaving. Based at least in part on what J and his siblings told K before leaving, K believed that they had taken a vacation and would return in a month or so. Father also remained in Oregon.

In April 2021, ODHS filed a declaration seeking protective custody of J, and the juvenile court issued an order authorizing ODHS to take J into protective custody.[2]

Over the next year, mother was seen in Oregon on two occasions: once in July 2021, when she went to the apartment of one of K's friends looking for K, and once in February 2022, at a McDonald's at which the friend worked.

In the meantime, ODHS learned that mother and J were in El Salvador and reported J as a missing person. In March 2022, mother, J, IV, and IZ arrived in Florida from El Salvador by plane, where they were detained by U.S. Customs & Border Control. Their intended ultimate destination was Portland. J returned to Oregon and was placed in foster care. Thereafter, on March 4, 2022, ODHS filed a petition alleging that J was within the juvenile court's dependency jurisdiction.

The juvenile court held trial on ODHS's petition in June 2022. At the conclusion of ODHS's presentation of evidence, parents moved to dismiss, arguing that the Oregon juvenile court lacked subject matter jurisdiction under the UCCJEA because the dependency case commenced with the filing of ODHS's petition in March 2022, the "first pleading" in the case, and, at that time, J's home state was El Salvador, where he had been living with mother for most

---

[2] ORS 419B.150 governs protective custody proceedings concerning children who are subject to an imminent threat of severe harm or pose an imminent threat of severe harm to others. Subsection (5) of that statute provides that a person authorized to take a child into protective custody shall file with the court a declaration setting forth specified information as to why protective custody is necessary and in the child's best interests.

of the previous year. Ultimately, the juvenile court denied parents' motions to dismiss, ruling that the proceeding commenced with ODHS's April 2021 filing of the protective custody declaration; that J's home state at that time was Oregon, as it was undisputed that he had lived in Oregon for the six months preceding the filing of the protective custody declaration; and, consequently, that the Oregon juvenile court had subject matter jurisdiction under the UCCJEA. The juvenile court expressly declined to reach the parties' arguments regarding whether J's absence from Oregon for the year preceding the March 4, 2022, dependency petition filing was temporary and whether Oregon was J's home state at that time. The court asserted dependency jurisdiction over J and entered a judgment accordingly.

Both mother and father appealed the jurisdiction judgment, challenging the juvenile court's denial of their motions to dismiss. After considering provisions of the UCCJEA and the dependency code, we concluded that a "child custody determination" under the UCCJEA "does not encompass the issuance of protective custody orders" and that the "initial child custody determination" in an Oregon dependency proceeding occurs only after the filing of a petition, rather than a declaration for protective custody. *M. P. I*, 328 Or App at 523-26. We noted that, in determining that the proceeding commenced with the April 2021 filing of the protective custody declaration, the juvenile court "explicitly declined to address [ODHS's] alternative arguments in support of subject matter jurisdiction."[3] *Id.* at 514. We concluded that, contrary to the juvenile court's conclusion, the proceeding commenced with the March 2022 dependency petition, ending our opinion with this paragraph:

> "We have concluded that the protective custody order was not an 'initial child custody determination' that gave Oregon continuing and exclusive home-state jurisdiction, and that the filing of the declaration in support of the protective custody order was not the 'commencement' of the

---

[3] ODHS argued in *M. P. I*, among other things, that, should we conclude that the dependency proceeding did not commence in April 2021 with the filing of its protective custody declaration, we "should remand to the juvenile court for that court to consider ODHS's alternative argument[] that *** in March 2022, Oregon was still [J's] home state *** because his absence from the state was only temporary ***."

dependency proceeding. ORS 109.741(1)(a). Instead, the initial child custody determination took place after the dependency petition was filed, and the filing of that petition was the commencement of the dependency proceeding. *Because Oregon was not J's home state 'on the date of the commencement of the proceeding,'—March 2022, when the petition was filed—Oregon does not have home-state jurisdiction.* ORS 109.741(1)(a). Accordingly, we remand for the juvenile court to determine whether there was any alternative basis for the court's jurisdiction under the UCCJEA."

*Id.* at 527 (emphasis added). We "vacated and remanded" to the juvenile court. *Id.*

On remand, one of the primary areas of dispute between the parties was whether the juvenile court was precluded from determining that J's absence from Oregon between April 2021 and March 2022, while he was in El Salvador, was "temporary" such that Oregon remained his home state when ODHS filed its dependency petition in March 2022. Father argued that we had already determined in *M. P. I* that Oregon was not J's home state in March 2022 and that that ruling was binding on the parties and juvenile court. ODHS argued that our statement that Oregon was not J's home state in March 2022 and that the Oregon juvenile court did not have home state jurisdiction was *dicta*.

ODHS also advanced two arguments regarding alternative bases for UCCJEA subject matter jurisdiction should the court conclude that it lacked home state jurisdiction: (1) that the Oregon juvenile court had UCCJEA subject matter jurisdiction under ORS 109.741(1)(c) because the Salvadoran consulate had not responded to Oregon Department of Justice communication attempts and had thus declined to exercise jurisdiction on the ground that Oregon was the more appropriate forum, and (2) that the Oregon court had temporary emergency jurisdiction under the UCCJEA because J was present in Oregon in March 2022 and it was necessary in an emergency to protect him from abuse. Both parents also disputed those alternative bases for UCCJEA subject matter jurisdiction.

Ultimately, the juvenile court concluded that we did not intend to preclude it from considering on remand

whether J's time away from Oregon, while he was in El Salvador, was temporary and concluded that, under the totality of the circumstances, it was a temporary absence and that Oregon therefore remained J's home state in March 2022. The juvenile court further concluded, that, should we determine that it was wrong in reaching those conclusions, "El Salvador ha[d] declined jurisdiction." Finally, the court concluded that, should we determine that both conclusions were incorrect, "as of March 2022, this Court did have temporary emergency jurisdiction." Following the hearing, the court entered an order documenting those rulings and ultimately, in August 2024, "re-entered" the July 2022 jurisdiction and disposition judgment. This appeal followed.

## II.   UCCJEA OVERVIEW

The UCCJEA "is a unform act governing child custody proceedings and child custody determinations when multiple states are implicated." *Dept. of Human Services v. J. S.*, 368 Or 516, 523, 495 P3d 1245 (2021). Its general purposes are, among other things, "to promote cooperation with the courts of other states so that custody decrees are rendered in the state that can best decide the case in the interest of the child, to avoid relitigating other states' custody decisions in this state, and to facilitate the enforcement of other states' custody decrees." *Id.* at 524 (citing Uniform Child Custody Jurisdiction and Enforcement Act § 101 comment, 9 ULA 649, 657 (1999)). Courts are required to "treat a foreign country as if it were a state of the United States for purposes of applying" the UCCJEA. ORS 109.714(1).

Pursuant to ORS 109.741(1), an Oregon court may have custody to make an initial child custody determination "under four non-emergency paths or one emergency exception." *M. P. I*, 328 Or App at 506. Those non-emergency paths include "home state" jurisdiction, ORS 109.741(1)(a); "significant-connection" jurisdiction, ORS 109.741(1)(b); "more-appropriate-forum" jurisdiction, ORS 109.741(1)(c); and "last-resort" jurisdiction, ORS 109.741(1)(d). *J. S.*, 368 Or at 524-25. A "foundational principle" of the UCCJEA is that the jurisdiction of a child's "home state" to make initial determinations regarding custody of that child takes priority

over other avenues for jurisdiction under the UCCJEA. *Id.* at 524. The UCCJEA defines "home state" as

> "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, 'home state' means the state in which the child lived from birth with any of the persons mentioned. Any temporary absence of any of the mentioned persons is part of the period."

ORS 109.704(7).

If a state other than Oregon is a child's home state, then an Oregon court may have subject matter jurisdiction to make an initial child custody determination if a court of the home state has declined to exercise jurisdiction on the ground that Oregon is the more appropriate forum, the child and one parent have a "significant connection" to Oregon, and there is "substantial evidence" in the state about "the child's care, protection, training and personal relationships." ORS 109.741(1)(b).

The UCCJEA also provides an exception to its jurisdictional priority statutory scheme for "temporary emergency jurisdiction." ORS 109.751; *J. S.*, 368 Or at 525. A juvenile court has temporary emergency jurisdiction to make a child custody determination if "the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." ORS 109.751(1).

### III.   ANALYSIS

Father argues that the juvenile court erroneously re-entered the corrected July 2022 jurisdiction and disposition judgment in August 2024. Father reads our decision in *M. P. I* as concluding that the juvenile court lacked subject matter jurisdiction under the UCCJEA and therefore lacked any authority to act in the dependency case, rendering the July 2022 judgment void. *See Dept. of Human Services v. K. W.*, 307 Or App 17, 26, 476 P3d 107 (2020), *rev den*, 368 Or 347 (2021) ("[S]ubject matter jurisdiction is a court's *authority* to judicially engage with a subject area or type of dispute."

(Emphasis in original.)); *see also Dept. of Human Services v. J. H. (A177299)*, 320 Or App 85, 88, 513 P3d 61, *rev den*, 370 Or 214 (2022) ("A void judgment is one that has no legal force or effect, and it thus may be attacked at any time and any place, whether directly or collaterally." (Internal quotation marks omitted.)). "Whether a judgment is void is a question of law." *Estate of Selmar A. Hutchins v. Fargo*, 188 Or App 462, 466, 72 P3d 638 (2003).

Contrary to father's argument, we did not conclude in *M. P. I* that there was no basis on which the Oregon juvenile court could have subject matter jurisdiction under the UCCJEA such that it had no authority to act when it adjudicated the petition and entered the jurisdiction and disposition judgment in June and July 2022. Instead, we concluded that the juvenile court had *erroneously determined* that it had jurisdiction, specifically, in determining that the dependency proceeding commenced in April 2021 with ODHS's filing of a protective custody declaration. *M. P. I*, 328 Or App at 527. Indeed, we expressly "remand[ed] for the juvenile court to determine whether there was an alternative basis for the court's jurisdiction under the UCCJEA." *Id.* Had we concluded that the juvenile court lacked UCCJEA subject matter jurisdiction—and therefore any authority to act in the dependency case—such a remand would have been unnecessary. *See Leanord v. Jackson Co. Rural Fire Dist. No. 3*, 71 Or App 249, 255, 692 P2d 141 (1984) (vacating and remanding with instructions to dismiss where we determined that the court lacked subject matter jurisdiction over the parties' dispute); *see also Menten and Deatherage*, 302 Or App 425, 429, 461 P3d 1075 (2020) ("We have noted that subject matter jurisdiction—the authority to exercise judicial power in a given subject area or dispute—is distinct from a court's exercise of its authority within a given subject area or dispute. *** A court may have authority to exercise judicial power in a given case, but then exercise that authority erroneously." (Internal citations omitted.)). We therefore reject father's argument that the juvenile court erroneously re-entered the July 2022 judgment because it was void.

We turn then to father's argument that we decided in *M. P. I* that Oregon was not J's home state in March 2022,

when ODHS filed the petition that commenced the dependency proceeding, and that our decision precluded litigation of questions related to home state jurisdiction under the law of the case doctrine. The scope of remand is a question of law that we review for legal error. *Maxfield v. Cain*, 295 Or App 553, 556, 435 P3d 779 (2019).

We acknowledge that our disposition in *M.P. I*—that is, the scope of questions encompassed by our "remand for the juvenile court to determine whether there was any *alternative* basis for the court's jurisdiction under the UCCJEA," 328 Or App at 527 (emphasis added)—was not as clear as it could have been. As father points out, we explicitly stated that, "[b]ecause *Oregon was not J's home state* 'on the date of the commencement of the proceeding,'—March 2022, when the petition was filed—*Oregon does not have home state jurisdiction.*" *Id.* at 527 (emphasis added). We agree that, if we actually decided that Oregon was not J's home state in March 2022, that decision would generally be "law of the case" that limited the questions on remand to whether there was a basis for UCCJEA subject matter jurisdiction *other* than home state jurisdiction. *See Poet v. Thompson*, 208 Or App 442, 450, 144 P3d 1067 (2006) (explaining the doctrine of law of the case as the "general principle of law *** that when a ruling or decision has been once made in a particular case by an appellate court, *** it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review" (internal quotation marks omitted)); *Koch v. So. Pac. Transp. Co.*, 274 Or 499, 512, 547 P2d 589 (1976) ("[T]he doctrine of the law of the case precludes relitigation or reconsideration of a point of *law* decided at an earlier stage of the *same* case," with the rationale being that "a court should adhere to a previous ruling on an identical matter, whether rightly or wrongly decided, in order to advance the policies" of "consistency of judicial decision, putting an end to litigation of matters once determined, and preserving the court's prestige").

On the other hand, if the statement on which father relies was not necessary to our disposition and was

therefore *dictum*, as ODHS argues, it would not constitute "law of the case" that is binding on the parties, the lower court, and, ultimately, us. *Blanchard v. Kaiser Foundation Health Plan*, 136 Or App 466, 470, 901 P2d 943, *rev den*, 322 Or 362 (1995) (reasoning that the law of the case doctrine "does not *** apply to every statement about the law or the facts that the court happens to venture in the course of rendering its decisions" and concluding that, where a statement was "entirely unnecessary to the disposition of the appeal and was *dictum*," we are not bound by it); *see also Engweiler v. Persson*, 354 Or 549, 558, 316 P3d 264 (2013) ("[I]t can be difficult to identify *dictum* in a court's opinion, because nonessential legal analysis and the assertions of immaterial legal propositions can be shrouded by the certitude of the court's views.").

We conclude that, notwithstanding the seeming certitude of our statement in *M. P. I* that the Oregon juvenile court did not have home state jurisdiction in March 2022, that statement was not necessary to our disposition and therefore was *dictum*. First, in making that statement, we answered a question that was not properly before us. There was no trial court ruling that Oregon did or did not qualify as J's home state in March 2022 before us to review, nor any of the underlying factual findings and rulings needed to make such a determination, particularly those related to whether J's time away from Oregon was a "temporary absence." Instead, the only rulings related to UCCJEA jurisdiction before us in *M. P. I* were the juvenile court's rulings that (1) the proceeding commenced with the April 6, 2021, filing of the protective custody declaration; (2) J's home state at that time was Oregon; and (3) as a result of those two predicate rulings, the court had "home state" subject matter jurisdiction under the UCCJEA. Indeed, the juvenile court had expressly declined to address the parties' alternative arguments, such as whether Oregon was J's home state if the proceeding commenced on March 4, 2022, when ODHS filed the dependency petition. In particular, where the lower court has not reached the question of whether a child's time away from a state constitutes a "temporary absence" under the UCCJEA, "that fact-bound question remains for the juvenile court to address in the first instance." *Dept. of Human*

*Services v. M. R.*, 298 Or App 59, 67, 447 P3d 74 (2019) (concluding that we could not resolve on appeal whether a child's absence from Oregon was temporary for UCCJEA purposes, given evidence in the record from which reasonable factfinders could reach different conclusions relevant to Oregon's "totality of the circumstances" test applicable to "temporary absence" determinations).

Moreover, we did not fully address the UCCJEA's provisions governing "home state" jurisdiction in *M. P. I.* Under ORS 109.741(1)(a), an Oregon court has subject matter jurisdiction to make an initial child custody determination "only if * * * [t]his state is the home state of the child on the date of the commencement of the proceeding * * *." ORS 109.704(7), in turn, defines "home state" as "the state in which a child lived with a parent or person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. * * * Any temporary absence of any of the mentioned persons is part of the period." We did not mention the "home state" definition in *M. P. I* or otherwise address whether J's absence from Oregon between April 2021 and March 2022 was a "temporary absence." In other words, whether or not we *could* have resolved the question of whether J's absence from Oregon was temporary within the UCCJEA's meaning, we did not do so.

For those reasons, we conclude that our statement in *M. P. I* that Oregon was not J's home state in March 2022 was *dictum* and therefore not binding on the parties, the juvenile court, or us under the law of the case doctrine. In any event, we conclude that the above analysis provides cogent reasons not to adhere to that portion of *M. P. I.* now, even were it law of the case. *See Marr et al v. Putnam et al*, 213 Or 17, 23, 321 P2d 1061 (1958) ("While * * * a court should not blindly adhere to a former decision that is manifestly erroneous, stability of the law requires that there be very cogent reasons for abandoning a former decision, particularly when it was between the same parties and on the same pleadings."); *see also State v. Poston*, 309 Or App 377, 383, 482 P3d 778 (2021) (recognizing that Oregon's approach to the doctrine of law of the case is "prudential in nature rather than blind to justice").

We turn next to father's argument that the juvenile court erroneously concluded that J's time away from Oregon between April 2021 and March 2022 was a "temporary absence" and that Oregon therefore remained his home state in March 2022, determinations that we review for legal error. *Schwartz and Battini*, 289 Or App 332, 337, 410 P3d 319 (2017) ("We review for legal error the trial court's determination that it had subject matter jurisdiction under the UCCJEA."). ODHS responds that the juvenile court made factual findings about mother's departure from and return to Oregon, that those findings are supported by evidence in the record, and that those findings support the legal conclusion that J's time away from Oregon, while he was in El Salvador, was a "temporary absence."

As noted, the UCCJEA defines "home state" as "the state in which a child lived with a parent or person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. * * * Any temporary absence of any of the mentioned persons is part of the period." ORS 109.704(7). To determine whether a child's time away from their putative home state qualifies as a "temporary absence" under the UCCJEA, Oregon courts apply a totality of the circumstances test, considering "all the surrounding circumstances of a purported temporary absence, including intent of the parties and duration of absence, to assess whether the absence should be treated as a temporary departure from a putative home state." *Schwartz*, 289 Or App at 342-43.

In *Schwartz*, the mother, father, and child had spent time in Oregon, France, and Indonesia in the years preceding the mother's filing for a judgment of legal separation from the father. *Id.* at 335-36. The father contended that Indonesia, not Oregon, had subject matter jurisdiction under the UCCJEA, because, although the child had been away from Indonesia during the six months preceding the mother's filing, that time away was, in the father's view, only a "temporary absence" for purposes of determining whether Indonesia was the child's home state. *Id.* at 337. We concluded that, given the totality of the circumstances surrounding the child's time away from Indonesia immediately

preceding the mother's filing, that time away was not a temporary absence such that Indonesia qualified as the child's home state:

> "First, the family's history reflects an open-ended residential history. That is, the parties lived sequentially in different places without firm plans either to stay in one place for a particular time, or about where to live next. Second, at the time of [the child's] departure from Indonesia with mother, the family was planning to relocate to Singapore, and there does not appear to have been any concrete plans for mother and [the child] to return to Indonesia in particular. Third, as father repeatedly emphasized below, the parties intended their time in Indonesia to be temporary. In view of all those circumstances, when [the child] and mother left Indonesia, they were not temporarily absent from Indonesia for purposes of the UCCJEA. ***
>
> "Consequently, Indonesia did not become [the child's] home state; it is undisputed that [the child] did not live there for the requisite six months if his time away does not qualify as a 'temporary absence' under the UCCJEA. We have concluded that [the child] was not temporarily absent from Indonesia."

*Id.* at 343-44.

In this case, the juvenile court concluded that J's time away from Oregon, while he was in El Salvador, was a temporary absence such that Oregon remained his home state in March 2022, when ODHS filed the dependency petition, making the following findings:

> "[M]y strong sense as to what happened here is, and I know parties will disagree with me, is that mom fled the jurisdiction to El Salvador to evade DHS involvement in this case. ***
>
> "The fact that the departure seemed to be very hasty; that there [was] still furniture and food in the home, that [K] didn't know why they were leaving. The fact that at least mom came back, we don't know how long she was back. And—when I say came back, came back in June, and then apparently, of 2021, and came back later in February.
>
> "And we don't know for sure how long she was in El Salvador. But it's clear to me, based on all the factors, Oregon is home for this family. And that El Salvador was

a temporary absence to avoid DHS involvement, which I can understand from mom's perspective. She's had a history with DHS. She doesn't trust them probably. But that history also helped form[] my *** conclusion here."[4]

There is evidence in the record to support those factual findings, and it was undisputed that Oregon was the ultimate destination for mother and J when they returned to the United States in March 2022. Moreover, there was no dispute that, in April 2021, Oregon was J's home state. Given the totality of the circumstances in this case, the juvenile court did not err in concluding that J's time away from Oregon from April 2021 to March 2022 was a temporary absence such that Oregon remained J's home state when ODHS filed the dependency petition in March 2022 and that the Oregon juvenile court therefore had home state jurisdiction under ORS 109.741(1)(a). Having concluded that the juvenile court had home state jurisdiction, we need not address father's arguments related to other bases for jurisdiction under the UCCJEA.

Finally, we turn to father's challenges to the juvenile court's overall assertion of dependency jurisdiction and each of the three bases on which the court ruled to assert jurisdiction. In father's view, because the July 2022 jurisdiction and disposition judgment was void as a matter of law, the juvenile court was essentially required to start over in adjudicating the petition and determine whether, at the time of the proceedings on remand, J was exposed to a current, nonspeculative threat of serious loss or injury. Father further argues, and ODHS concedes, that ODHS presented no evidence on remand in support of the allegations in the dependency petition.

As set out above, the July 2022 jurisdiction and disposition judgment was not rendered void as a result

---

[4] The court also stated that it did "not think the drafters of the UCCJEA, as they pointed out in their commentary *** intended to reward a party" who would "evade DHS involvement." We understand the court's statement to refer to UCCJEA § 208 (ORS 109.764) and its associated commentary. Those provisions allow a court that has UCCJEA jurisdiction as a result of a person's "unjustifiable conduct" to decline to exercise that jurisdiction. UCCJEA § 208 comment, 9 ULA 655, 684-85 (1999). The commentary refers to cases in which parents "act in a reprehensible manner, such as removing, and secreting, retaining, or restraining the child" and "ensur[ing] that abducting parents will not receive an advantage for their unjustifiable conduct." *Id.* at 684. Those provisions address circumstances that are unlike those presented here and do not inform our analysis.

of our decision in *M. P. I*. Having now concluded that the juvenile court *did* have subject matter jurisdiction under the UCCJEA when it adjudicated the dependency petition in June 2022 and entered the judgment in July 2022—notwithstanding that at the time there was no legally correct determination of jurisdiction—we see no reason that relitigation of the entire dependency petition was required when the court made its subject matter jurisdiction determination on remand of *M. P. I*.

Affirmed.