Argued and submitted January 25, vacated and remanded October 4, 2023

In the Matter of J. P.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*v.*
M. P.
and S. F.,
*Appellants.*

Clackamas County Circuit Court
21JU01658; A179157

537 P3d 593

In this juvenile dependency case, mother and father separately appeal, each raising three assignments of error. Both parents appeal the juvenile court's denial of their motion to dismiss on the grounds that the juvenile court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Father additionally assigns error to the court's decisions to appoint and retain for him a guardian *ad litem*, and mother assigns error to the court's entry of an order requiring her to have a psychological evaluation and its decision that dependency jurisdiction was warranted. *Held*: The Court of Appeals held that the juvenile court erred in finding that it had home-state jurisdiction under the UCCJEA because Oregon was not the child's home state when the filing of a dependency petition commenced the juvenile dependency proceeding. A protective custody order was not an "initial child custody determination" that gave Oregon continuing and exclusive home-state jurisdiction, and the filing of the declaration in support of the protective custody order was not the "commencement" of the dependency proceeding. ORS 109.741(1)(a). Instead, the initial child custody determination took place after the dependency petition was filed, and the filing of that petition was the commencement of the dependency proceeding. The court additionally affirmed the juvenile court's decision to appoint a guardian *ad litem* for father because any error was not plain. Because the court concluded that remand was necessary on both parents' first assignment of error, it did not reach father's third assignment of error or mother's other two assignments of error.

Vacated and remanded.

Cody M. Weston, Judge.

Tiffany Keast, Deputy Public Defender, argued the cause for appellant M. P. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

George W. Kelly filed the brief for appellant S. F.

Erin K. Galli, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Vacated and remanded.

**JACQUOT, J.**

In this juvenile dependency case, 11-year-old J's parents moved to dismiss the case at the close of the jurisdictional hearing on the grounds that the court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The juvenile court denied the motion and entered a judgment of jurisdiction. Mother and father separately appeal, each raising three assignments of error. First, both parents appeal the juvenile court's denial of the motion to dismiss. Father also assigns error to the court's decisions to appoint and retain a guardian *ad litem* for him, and mother also assigns error to the court's entry of an order requiring her to undergo a psychological evaluation, and the court's decision that dependency jurisdiction was warranted.

As explained below, whether Oregon courts have home-state initial custody jurisdiction under the UCCJEA depends on whether Oregon was the child's home state at "the date of the commencement of the proceeding," ORS 109.741 (1)(a),[1] *i.e.*, when the "first pleading" was filed in the proceeding, ORS 109.704(5). The juvenile court concluded that the relevant proceeding commenced when the Department of Human Services (DHS) filed an *ex parte* declaration in support of a protective custody order in April 2021, at which time Oregon was J's home state. Consequently, the court concluded, Oregon had home-state jurisdiction under the UCCJEA to determine the subsequent dependency action. Parents argue that that was error, because the dependency proceeding commenced when the dependency petition was filed in March 2022. It is undisputed that, in March 2022, J had not lived in Oregon for the last nine months. Parents contend that the protective custody declaration and order did not create exclusive continuing jurisdiction for Oregon, and that Oregon did not have home-state initial custody jurisdiction under the UCCJEA when the custody proceedings commenced in Oregon in March 2022.

---

[1] Under some circumstances, Oregon courts may have home-state jurisdiction when Oregon was the child's home state within six months before the commencement of the proceeding. ORS 109.741(1)(a). That possibility is not at issue here.

As explained below, we conclude that the relevant proceeding is the juvenile dependency proceeding, and that proceeding commenced in March 2022, when the petition was filed and J was removed from his mother's care. Consequently, the court erred in finding that it had home-state jurisdiction under the UCCJEA, because Oregon was not J's home state in March 2022. We remand for the juvenile court to determine if there was another basis for the Oregon courts to take jurisdiction under the UCCJEA and, if not, to dismiss the petition.

On father's second assignment of error, which is largely unpreserved—father said in the juvenile court only that he did not need a guardian *ad litem*—we affirm the trial court's decision to initially appoint a guardian *ad litem* because any error is not plain. It is not beyond dispute on the face of the record that the trial court erred. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991); *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (to qualify as plain, the error must be "obvious, not reasonably in dispute").

Having determined that remand is necessary on each parent's first assignment of error and that it is not clear that there was any path to UCCJEA jurisdiction over J, we do not reach father's third assignment of error or mother's other two assignments of error. If, on remand, the juvenile court determines that there is jurisdiction and the matter is litigated, parents may appeal again and renew their other assignments of error. We note that if requested, the juvenile court must evaluate the continuing need for a guardian *ad litem* for father under ORS 419B.237(2)(a) rather than rely on the past appointment.

## I.  LEGAL BACKGROUND

### A.  *The UCCJEA Generally*

To provide the necessary framework for the facts of this case, we begin with a brief overview of the UCCJEA and the protective custody order scheme in Oregon.

The UCCJEA is "a uniform act governing child custody proceedings and child custody determinations when

multiple states are implicated" that has been adopted in almost every state. *Dept. of Human Services v. J. S.*, 368 Or 516, 523, 495 P3d 1245 (2021). Oregon adopted the UCCJEA in 1999. *Id.* (citing Or Laws 1999, ch 649). It is codified at ORS 109.701 to 109.834. *Id.* The Supreme Court recently explained that

> "the purposes of the UCCJEA are, among other things, to avoid jurisdictional competition and conflict with other states' courts in child custody matters [and] to promote cooperation with the courts of other states so that custody decrees are rendered in the state that can best decide the case in the interest of the child[.]"

*Id.* (citing UCCJEA § 101 comment, 9 ULA 649, 657 (1999)).

Under the UCCJEA, to make an initial custody determination for a particular child, a court must have initial custody jurisdiction. *Id.* at 525 (citing ORS 109.741); *see also* UCCJEA § 201, 9 ULA at 671 (model act governing initial child-custody jurisdiction); UCCJEA § 102(8), 9 ULA at 658 (defining "initial determination" as "the first child-custody determination concerning a particular child"); ORS 109.704(8) (applying the same definition of "initial determination" as UCCJEA § 102(8)). That court then generally has "exclusive, continuing jurisdiction" over custody issues involving the child until and unless certain events occur. ORS 109.744.

Pursuant to ORS 109.741(1), a state may have initial custody jurisdiction under four non-emergency paths or one emergency exception. *J. S.*, 368 Or at 525. The first path to initial custody jurisdiction, "home-state jurisdiction"—the path to jurisdiction that is at issue in this case—is prioritized: Any state that is not the child's home state will defer to the home state, if there is one, when taking jurisdiction over a child custody dispute. *Id.* at 524-25; ORS 109.741(1)(a); UCCJEA § 201 comment, 9 ULA at 672 ("The jurisdiction of the home State has been prioritized over other jurisdictional bases."); *see also* ORS 109.744(1) ("Except as otherwise provided in ORS 109.751, a court of this state that has made a child custody determination consistent with ORS 109.741 or 109.747 has exclusive, continuing jurisdiction over the determination until" certain other events occur.).

Home-state initial custody jurisdiction under Oregon's codification of the UCCJEA is governed by ORS 109.741, which provides that Oregon courts have home-state initial custody jurisdiction only if

"this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]"

ORS 109.741(1)(a). "Commencement" of a proceeding is defined as "the filing of the first pleading in a proceeding." ORS 109.704(5).

"If Oregon is not the child's home state, then the court must determine if it is permissible to proceed along one of the other three pathways to jurisdiction set out in ORS 109.741, [described] as 'significant-connection,' 'more-appropriate-forum,' and 'last-resort' jurisdiction." *J. S.*, 368 Or at 525 (internal citation omitted); ORS 109.741(1)(b) - (d). ORS 109.741(1) additionally provides for an exception called temporary emergency jurisdiction. Temporary emergency jurisdiction permits a court that does not have initial custody jurisdiction to make a child custody determination if the child is present in the state and either the child has been abandoned or it is necessary in an emergency to protect the child from mistreatment or abuse. *J. S.*, 368 Or at 525-26; ORS 109.741(1) (prefacing the requirements for initial custody jurisdiction with the statement, "[*e*]*xcept as otherwise provided in ORS 109.751*" (emphasis added)); ORS 109.751(1) (statutory basis for temporary emergency jurisdiction); UCCJEA § 204, 9 ULA at 676 (model act for temporary emergency jurisdiction).

Notice is a critical component of an initial child custody determination. An initial child custody determination is binding and conclusive on all who have been served or submitted to jurisdiction, and had an opportunity to be heard, unless and until modified. UCCJEA § 106, 9 ULA at 663. Notice must be given, and the act allows multiple forms of service for people outside the state. UCCJEA § 108, 9 ULA at 664.

Moreover, UCCJEA § 205 provides, in part:

"(a) Before a child-custody determination is made under this [Act], notice and an opportunity to be heard in accordance with the standards of Section 108 must be given to all persons entitled to notice under the law of this State as in child-custody proceedings between residents of this State, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child.

"(b) This [Act] does not govern the enforceability of a child-custody determination made without notice or an opportunity to be heard."

9 ULA at 679 (brackets in original); *see also* ORS 109.754(2) (same).

After a court has made a qualifying initial custody determination involving a child, courts in that state will have "exclusive continuing jurisdiction" to hear all future matters involving that child until certain conditions not applicable here have occurred. UCCJEA § 202, 9 ULA at 673. "'Modification' means a child-custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." UCCJEA § 102(11), 9 ULA at 658 (model act definitions); ORS 109.704(11) (same). Crucially, a protective order issued under state law "is entitled to interstate enforcement and nonmodification under this Act *** only if there has been notice and a reasonable opportunity to be heard as set out in Section 205." UCCJEA § 204 comment, 9 ULA at 678-79.

B.  *Dependency Proceedings and Protective Custody Orders Generally*

The statutory scheme governing dependency proceedings, which are subject to the UCCJEA, is codified in ORS chapter 419B. *J. S.*, 368 Or at 523 (citing ORS 419B.803(2)). The dependency code is concerned with children who are endangered for various reasons. ORS 419B.100(1). It provides for children to be protected by the state and, if necessary, removed from the care and control

of their parents in order to safeguard their welfare either temporarily or permanently. ORS 419B.090(2). Assumption of dependency jurisdiction by a court triggers, in most cases, an obligation on behalf of the state to attempt to improve the conditions within the family so that the child can be safe at home without state involvement and the parents can resume the ability to exercise their rights and obligations to make decisions for and meet the needs of their child. *See generally* ORS 419B.090.

There are various ways to begin state intervention in the life of a family under the dependency code, and not all of them require removal of the child. The first way is to file a petition without removing the child. A petition is the document that sets out the factual allegations and specific subsection(s) of ORS 419B.100 the person seeking jurisdiction alleges apply to a family. ORS 419B.809. Anyone can file a petition in juvenile court without removing a child. ORS 419B.809(1). The court should then ensure that the respondents are served and, within 60 days, hold a hearing to determine whether the juvenile court has jurisdiction over the child. ORS 419B.305(1) (timing of hearing); ORS 419B.823 (summons). While this process is working its way through the court system, the court may issue a restraining order to protect the child in the home if there is probable cause to believe abuse occurred and that the person to be restrained committed the abuse. ORS 419B.845(1)(a)(A). The person has a right to request a hearing within 30 days. ORS 419B.845(3). The court has statutory power to enter other limited specific orders to protect the child prior to the jurisdictional hearing. *See, e.g.*, ORS 419B.110 (providing for an order for emergency medical care). Other than those limited exceptions, or stipulated orders entered into at a shelter hearing, the court has little ability to interfere in a family prior to a jurisdictional hearing, without removing the child.

The process described above is often deemed too slow to be safe for the children that are the subject of concern.[2]

_____

[2] The removal process described in the subsequent paragraphs does not apply to "Indian children" pursuant to the Indian Child Welfare Act, 25 USC §§ 1901 to 1963, and the Oregon Indian Child Welfare Act, ORS 419B.600 to 419B.665, which require heightened removal standards and additional procedural protections before a child can be removed from caregivers by state actors,

Thus, the second path to beginning a dependency case is to remove a child from their parent or caregiver. Employees of DHS, peace officers, or counselors have the ability to take a child into protective custody. ORS 419B.150(2). If this happens, jurisdiction will attach at the time of removal. ORS 419B.157.[3] This empowers the court to make an initial disposition of the child after a petition has been filed, ORS 419B.175(1)(d), and if the disposition includes placement of the child into care, triggers an immediate shelter hearing within 24 judicial hours, ORS 419B.183. Before the court can make a dispositional order at a shelter hearing, a petition must be filed. ORS 419B.175(1)(d).

When children are taken into protective custody or removed pursuant to ORS 419B.150, there are two categories of cases: ORS 419B.150(4)(a) (severe harm) and ORS 419B.150(5) (protective custody order process). In the most serious cases, when the caseworker or law enforcement officer has determined that there is an imminent threat of severe harm to the child, that the child poses an imminent threat of severe harm to others, or that there is no time to obtain a court order because the family is imminently likely to flee the jurisdiction, the caseworker or officer may remove the child without a protective custody order. ORS 419B.150(4)(a)(A) - (C).

In the category to which this case belongs, the risk is not as imminent as in ORS 419B.150(4), but the caseworker, officer, or counselor is still concerned that filing a petition and obtaining a jurisdictional determination within 60 days

---

due to historical discrimination, misunderstanding of tribal customs, and the additional consideration of the tribe's interest in its own children. 25 USC § 1901; ORS 419B.150(4)(b) (providing more restrictive requirements for the removal of "Indian children").

    [3] "With certain exceptions, 'the jurisdiction of the juvenile court of the county in which a child is taken into protective custody shall attach from the time the child is taken into custody.'" *Dept. of Human Services v. W. C. T.*, 314 Or App 743, 759, 501 P3d 44 (2021) (citing ORS 419B.157); *see also Dept. of Human Services v. C. M. H.*, 301 Or App 487, 496, 455 P3d 576 (2019), *aff'd*, 368 Or 96 (2021) (explaining that the reference to "jurisdiction" in ORS 419B.157 is necessarily a reference to subject matter jurisdiction). This is true whether removal is pursuant to a protective custody order or an imminent threat removal by a law enforcement officer, protective services worker, or counselor pursuant to ORS 419B.150(4)(a) (A) to (C). ORS 419B.157.

will be too slow to protect the child. In these cases, a protective custody order is sought.

ORS 419B.150(5) provides:

"A person authorized to take a child into protective custody shall apply for a protective custody order, as described in subsection (7) of this section, by submitting a declaration based on information and belief that sets forth with particularity:

"(a)   Why protective custody is necessary and the least restrictive means available to:

"(A)   Protect the child from abuse;

"(B)   Prevent the child from inflicting harm on self or others;

"(C)   Ensure that the child remains within the reach of the juvenile court to protect the child from abuse or to prevent the child from inflicting harm on self or others; or

"(D)   If the department has reason to know that the child is an Indian child, prevent imminent physical damage or harm to the child.

"(b)   Why protective custody is in the best interests of the child."

The court may issue an order if the removal is necessary and in the best interests of the child. ORS 419B.150(7); *Dept. of Human Services v. W. C. T.*, 314 Or App 743, 759, 501 P3d 44 (2021) (citing ORS 419B.150(6)). If the court signs the order, the worker will try to meet with the family and may execute the order and remove the child from their caregiver. ORS 419B.150; ORS 419B.185. No notice to parents or other parties is necessary before, or even after, issuance of a protective custody order. Instead, parents receive notice of the order's existence, if ever, only after the child is taken into protective custody.[4] *See* ORS 419B.160(3) ("As soon as

---

[4] The orders have no expiration date, and some are never executed. We note that where the UCCJEA and ORS 419B.150(5) intersect, the underlying purposes of both would seem to support a future amendment to ORS 419B.150(5) to include an expiration date on protective custody orders of six months or some reasonable shorter period of time. This would avoid confusion in circumstances where the home state of the child could change before the order was served, avoid improper enforcement out of state (as happened here), and simplify recordkeeping by allowing closing of cases involving unserved protective custody orders.

practicable *after the child is taken into protective custody*, the person taking the child into protective custody shall notify the child's parent, guardian or other person responsible for the child." (Emphasis added.)). That notice must "inform the parent, guardian or other person of the action taken and the time and place of the [shelter] hearing." *Id.* A shelter hearing must generally be conducted within 24 hours of a child entering shelter care pursuant to a protective custody order. ORS 419B.183; *W. C. T.*, 314 Or App at 759 (explaining that "[a] speedy hearing within 24 hours is required").

At the shelter hearing, parents are given their first opportunity to present evidence to the juvenile court that the child can safely return home prior to dependency proceedings. ORS 419B.185(1). The court will then determine whether "it is in the best interests of the child or ward that the child or ward be removed from the home or continued in care." ORS 419B.185(3)(d). If the court determines that removal is in the best interests of the child, an "order for temporary custody is included in a shelter order, and it continues until the dependency petition is adjudicated." *J. S.*, 368 Or at 532 (citing ORS 419B.150; ORS 419B.185); *see also* Juvenile Court Improvement Program, *Shelter Hearing - ORS 419B.185*, Oregon Juvenile Dependency Benchbook 7/21 at 2 (2021), https://www.courts.oregon.gov/programs/jcip/ SiteAssets/Lists/JuvDepBenchbook/EditForm/Shelter.pdf (accessed September 22, 2023) (explaining that the primary purpose of a shelter order is to "determine whether a child who is * * * taken into protective custody and is alleged to be within the juvenile court's dependency jurisdiction can be maintained safely in the home, pending adjudication of the petition"). A petition must still be filed before a court can make a child custody determination at the shelter hearing if removal starts the case, and a petition must be filed before the juvenile court may issue an order that a child be placed in temporary custody. ORS 419B.809(5) (court may issue an order for temporary custody at any time after a petition is filed); ORS 419B.183, ORS 419B.185 (describing scope and inquiry at shelter hearing).

---

Most importantly, consistent with the goals of the UCCJEA, such an amendment would avoid inconsistent orders involving the same child in multiple states.

## II.   FACTS AND PROCEDURAL HISTORY

The facts relevant to our analysis are procedural. On April 6, 2021, the DHS filed a Declaration in Support of Request for Protective Custody Order with the Clackamas County Juvenile Court. The declaration stated the following: J was born in June 2012. In February 2021, mother contacted the police after J disclosed to her that he had been sexually abused by his 15-year-old brother. Mother took J to the hospital, where he disclosed sexual abuse to hospital staff. Mother met with DHS during a home visit soon after and scheduled an appointment for J to be interviewed by the Children's Center. Mother and J did not show up for the forensic interview. DHS was unable to make contact with mother or father, the declarant having been informed that mother and J had gone to El Salvador.

The court issued the protective custody order, referred to by DHS workers during testimony as a "pick-up order," on the same day that the declaration was filed. The protective custody order indicated that "[b]ased on the submitted declaration and/or sworn testimony, this Court does have jurisdiction under the UCCJEA (ORS 109.701 to 109.834) to make 'a child custody determination.' Oregon is the child's home state (has been living with parent or person acting as a parent for six months or from birth if child less than six months old) (ORS 109.741(1)(a))."

A year then passed. On March 1, 2022, U.S. Customs in Orlando, Florida, which had previously received alerts about J, discovered mother, J, and another of mother's children arriving from El Salvador and took J into protective custody. J was returned to Oregon and placed in foster care. After interviewing J and engaging in related investigation, DHS filed its first dependency petition regarding J on March 4, 2022, alleging that J was endangered by circumstances or conduct related to each parent.[5]

The jurisdictional hearing occurred in June 2022. Parents moved to dismiss at the close of DHS's case, arguing

---

[5] DHS amended the petition three times, on March 25, 2022, March 30, 2022, and May 13, 2022. Each petition included a section, entitled Uniform Child Custody Jurisdiction and Enforcement Act information, that laid out information in substantially the same form as the template provided in ORS 419B.809(8).

that the court lacked subject matter jurisdiction under the UCCJEA because the case "commenced" for purposes of the UCCJEA with the filing of DHS's dependency petition, which parents identified as the first pleading, on March 4, 2022, when J's home state for purposes of the UCCJEA was El Salvador. DHS responded that its April 6, 2021, declaration was the first pleading that commenced a child custody proceeding and established exclusive continuing jurisdiction in Oregon for purposes of UCCJEA. The court agreed with DHS, ruling that the case commenced for UCCJEA purposes when DHS filed the declaration on April 6, 2021, at which time Oregon was J's home state, and asserted that jurisdiction remained exclusive and continuing from that point. In doing so, the court explicitly declined to address DHS's alternative arguments in support of subject matter jurisdiction. After the hearing, the court entered a jurisdictional judgment, and, as explained above, parents appeal.

## III.  DISCUSSION

### A.  *Standard of Review*

The question we must answer is whether the relevant date for determining J's home state was April 2021, when the declaration in support of the protective custody order was filed, or March 2022, when the dependency petition was filed. That presents a question of statutory interpretation, which we review for legal error. *J. S.*, 368 Or at 527-28. We interpret ORS 109.741, ORS 419B.150, "and other relevant provisions of the UCCJEA as codified in Oregon at ORS 109.701 to 109.834, applying the methodology described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)." *Id.* When doing so, "we consider the text and context of the statutes in light of any legislative history that appears useful to the court's analysis." *Id.* at 528.

### B.  *Analysis*

Home-state initial custody jurisdiction under Oregon's codification of the UCCJEA is governed by ORS 109.741, a provision that mirrors UCCJEA § 201. In relevant part, ORS 109.741 states,

> "[A] court of this state has jurisdiction to make an initial child custody determination * * * if this state is the home

state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]"

ORS 109.741(1)(a) (formatting modified).

Thus, the juvenile court had jurisdiction to make an "initial child custody determination" if Oregon was J's home state "on the date of the commencement of the proceeding." *Id.* "Commencement" means "the filing of the *first pleading* in a proceeding." ORS 109.704(5) (emphasis added); *see also* UCCJEA § 102(5) (same).

### 1. *Initial child custody determination*

We begin by considering whether, as DHS contends, and the juvenile court ruled, the "initial child custody determination," ORS 109.741(1)(a), for J is the protective custody order. In DHS's view, because the protective custody order is the initial child custody determination, and Oregon was J's home state when the declaration—the "first pleading" in the protective custody order "proceeding"—was filed, the issuance of the protective custody order established continuing and exclusive home-state jurisdiction over J. Under that view, the dependency petition, subsequent proceedings, and dependency judgment simply represent a modification of the initial child custody determination pursuant to the definition of modification in UCCJEA § 102(11), ORS 109.704(11). However, as explained below, we conclude that the *ex parte* protective custody order is not the "initial child custody determination" referred to by ORS 109.741(1)(a), that is, an initial child custody determination that gives rise to exclusive and continuing home-state jurisdiction under the UCCJEA. *See* ORS 109.744(1) ("Except as otherwise provided in ORS 109.751 [concerning temporary emergency jurisdiction], a court of this state that has made a child custody determination consistent with ORS 109.741 or 109.747 has exclusive, continuing jurisdiction over the determination until" certain other events occur.).

A "child custody determination" is "a judgment or other order of a court providing for the legal custody,

physical custody, parenting time or visitation with respect to a child." ORS 109.704(3); *see also* UCCJEA § 102(3). The term includes "a permanent, temporary, initial and modification order." ORS 109.704(3); *see also* UCCJEA § 102(3) (same). "'Initial determination' means the first child custody determination concerning a particular child." ORS 109.704(8); *see also* UCCJEA § 102(8) (same).

In support of its view that the protective custody order was the initial child custody determination for J, DHS points out that the order provides for DHS to take J into "protective custody," which it asserts is a type of physical custody, and that the definition of "child custody determination" includes a "temporary" determination. It asserts that, because the protective custody order is an order of the court that allows DHS to take J into physical custody, it is the kind of determination that is a "child custody determination" under ORS 109.704(3) and, thus, is the "initial child custody determination" for J. ORS 109.741(1)(a). The meaning of a statute can never be determined by examining its text alone; the text must be examined in the context in which it is used. As explained below, viewing the statutory text in context—both the context of the UCCJEA and the context of the protective custody order statute—it is clear that the legislature did not intend a protective custody order to be an "initial child custody determination" that confers home-state jurisdiction under ORS 109.741(1)(a).

Text and context must be given primary weight in statutory interpretation analysis. *Gaines*, 346 Or at 171. One of the most persuasive forms of context includes other provisions of the same act, as this is the type of context the legislature was most likely aware of, and this type of context should therefore be given significant weight. *See, e.g., Unger v. Rosenblum,* 362 Or 210, 221, 407 P3d 817 (2017) ("[W]e consider all relevant statutes together so that they may be interpreted as a coherent, workable whole.").

DHS's argument is undermined by other provisions of the UCCJEA. It provides that a child custody determination can be made only when notice and an opportunity to be heard are provided to a variety of parties, including parents: "Before a child custody determination is made under ORS

109.701 to 109.834, notice and an opportunity to be heard in accordance with the standards of ORS 109.724 must be given to [among others,] any parent whose parental rights have not been previously terminated \*\*\*." ORS 109.754(1). When a child custody determination is made "without notice or an opportunity to be heard," the UCCJEA (enacted in ORS 109.701 to 109.834) does "not govern the enforceability of [the] child custody determination." ORS 109.754(2).

Although ORS 109.754(2) is not phrased in terms of jurisdiction—it refers only to "enforceability"—it indicates that a determination that meets the definition of "child custody determination" but is made without the required notice or opportunity to be heard is not entitled to the interstate enforcement and right to nonmodification that compliance with the UCCJEA provides. UCCJEA § 303(a), codified as ORS 109.781(a), clarifies that out-of-state "enforceability" under the UCCJEA turns on whether the other state's court "exercised jurisdiction in substantial conformity with" the UCCJEA. UCCJEA § 303(a) ("A court of this State shall recognize and enforce a child-custody determination of a court of another State if the latter court exercised jurisdiction in substantial conformity with this [Act] \*\*\*."). The fact that a determination made without notice or the opportunity to be heard is not one to which other states' courts will defer belies the idea that such a determination is sufficient to confer exclusive and continuing jurisdiction. The UCCJEA's prioritization of home-state jurisdiction implements its purpose of avoiding jurisdictional competition and conflict with other states' courts in child custody matters by providing clear rules on when state courts will defer to one another's determinations on custody matters. UCCJEA § 201; ORS 109.741. When one state's courts enter a child custody determination without notice or an opportunity to be heard, the determination is not entitled to enforcement in other states. An unenforceable determination cannot preempt other states from exercising jurisdiction, given that there is no enforceable determination for those other courts to defer to.

That understanding is confirmed by the UCCJEA's commentary, which addresses situations like this one. It recognizes that state law may give courts "the power to issue

an enforceable temporary custody order without notice and hearing in a case without any interstate element." UCCJEA § 205 comment. The UCCJEA does not address whether such an order is enforceable within the state. *Id.* ("Such temporary orders may be enforceable, as against due process objections, for a short period of time if issued as a protective order or a temporary restraining order to protect a child from harm. Whether such orders are enforceable locally is beyond the scope of this Act."). However, it recognizes that, regardless of its enforceability within the state, "[a]n order is entitled to interstate enforcement and nonmodification under this Act only if there has been notice and an opportunity to be heard." *Id.*

The text of ORS 419B.150, which governs protective custody orders, also demonstrates that a protective custody order is not intended to be an "initial child-custody determination" that confers exclusive and continuing jurisdiction. In addition to requiring notice and an opportunity to be heard before a child custody determination is made, the UCCJEA, in section 209, requires certain information to be included in the first pleading in a child custody proceeding.[6] That information is not required in a declaration in support of a protective custody order. *Compare* ORS 109.767 (requiring a variety of information in a "first pleading") *with* ORS 419B.150 (requiring none of that information in a declaration in support of a protective custody order).

Protective custody orders have been included in the juvenile code since at least 1953.[7] They were known to the Legislative Assembly when it adopted the UCCJEA in 1999.

_____

[6] "In a child custody proceeding, each party, in its first pleading or in an attached affidavit or declaration *** shall give information" about: "the child's present address or whereabouts, the places where the child has lived during the last five years and the names and present addresses of the persons with whom the child has lived during that period," ORS 109.767(1); whether a party has participated in any capacity in any other proceeding concerning custody, parenting time or visitation with the child, ORS 109.767(1)(a); whether a party knows of any "proceeding that could affect the current proceeding," ORS 109.767(1)(b); and whether a party "[k]nows the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of legal custody or physical custody of, or parenting time or visitation with, the child," ORS 109.767(1)(c).

[7] *Former* ORS 419.220 (1953), later renumbered *former* ORS 418.450 (1961) and ultimately repealed by Oregon Laws 1967, chapter 534, section 34, states:

Armed with that knowledge, that legislative body did not modify the language involving protective custody orders to require the inclusion of UCCJEA information required in section 209 at a protective custody proceeding.

The modern protective custody statute in its initial form did not require inclusion of UCCJEA information from section 209 either. ORS 419B.150 was substantially revised in 2019 to accommodate a federal due process concern that Oregon's standard for removal without a protective custody order was too low, allowing caseworkers to remove children in circumstances when it was not necessary.

In fact, prior to that substantial amendment, judicial oversight over the protective custody process was much less common. Or Laws 2019, ch 594, § 3a; HB 2849 (2019). The legislative record does not indicate that the legislature contemplated whether increased judicial oversight over the protective custody process would implicate the UCCJEA. Instead, the legislative record supports that the amendment was an effort to bring Oregon protective custody standards in line with federal constitutional requirements.

Aaron Knott, Legislative Director of the Department of Justice, explained in written testimony in support of House Bill (HB) 2849 that prior to the 2019 amendment, the statutory language "authoriz[ing] a child to be taken into protective custody when the child's 'condition or surroundings reasonably appear to be such as to jeopardize the child's welfare'" had been "part of Oregon's juvenile code since 1959." Testimony, House Committee on Judiciary, HB 2849, Apr 3, 2019 (statement of DOJ Legislative Director Aaron Knott about the standards for protective custody under HB 2849) (Knott Testimony). Knott further testified that

---

"(2) Whenever complaint is made to the judge of any court of record that any child under the age of 15 years is abandoned by or is sustaining relations to its parents or guardians mentioned or contemplated in subsection (1) of this section [broadly, those that would endanger the child], the judge shall issue a warrant for the arrest of such child and take testimony in relation to the alleged grounds of complaint[.]"

The "warrant" referred to in *former* ORS 419.220(2) (1953) could line up with the language allowing a court to authorize taking temporary custody of a child by an "order indorsed on the summons" in *former* ORS 419.569(1)(c) (1959), which was still in effect at the time the UCCJEA was adopted by the Oregon legislature through Oregon Laws 1999, chapter 649.

"HB 2849 is the product of a work group created following the 2018 legislative session to draft amendments to ORS 419B.150, the statute authorizing peace officers, juvenile court counselors, and employees of the Department of Human Services to take children into protective custody without a court order." *Id.*

HB 2849 was drafted because the prior legal standard "allowing a child to be taken into protective custody without a court order when the conditions or surroundings appear to jeopardize the child's welfare" was "at odds with case law applying the Fourth and Fourteenth Amendments of the U.S. Constitution." Staff Measure Summary, House Committee on Judiciary, HB 2849 (2019). Knott explained that the Ninth Circuit Court of Appeals, in *Kirkpatrick v. County of Washoe*, 843 F3d 784 (9th Cir 2016), held that "in order to comply with *** the United States Constitution, the standard for the removal of children from their parents without a court order is much more restrictive, requiring a showing of both exigency and severe harm." Knott Testimony at 1; *see also Kirkpatrick*, 843 F3d at 791 ("Accordingly, under [*Rogers v. County of San Joaquin*, 487 F3d 1288 (9th Cir 2007)], the social workers here lacked cause to forgo a warrant if they had adequate time to pursue one through the ordinary judicial process without risking B. W.'s well-being."). The 2019 amendment instituted the higher standard we have today, mandating that authorized persons seek a court order before taking a child into protective custody unless there is reasonable cause to believe that there is an imminent threat necessitating removal without an order. Or Laws 2019, ch 594, § 3a; ORS 419B.150(4)(a).

Under the present standard, even where a protective custody order is issued, judicial oversight is minimal and there is often no court "proceeding" to speak of. Pursuant to ORS 419B.150, after a person authorized to take a child into protective custody delivers a declaration in support of a request for protective custody to the juvenile court, ORS 419B.150(6)(a), the court may then order that the child be taken into protective custody after a review of the declaration—no protective custody hearing is required. ORS 419B.150(7); *see also* ORS 419B.150(8) (allowing for the

court to transmit a protective custody order to the applicant via electronic communication). Nothing in ORS 419B.150 contemplates any participation by parents or caregivers. Nor, as noted above, is any notice provided to parents or anyone else. The first notice and opportunity to be heard for parents or people having physical custody of the child is the shelter hearing. ORS 419B.185(1).

Legislative history supports that this minimal judicial involvement is intentional. Mary Sofia, Legislative Director of the Oregon Criminal Defense Lawyers Association, testified that the 2019 amendment of ORS 419B.150 "makes application for a court order for removal easier for caseworkers by eliminating the requirement for a notary and allowing for the electronic or telephonic exchange of information in order to obtain a court order." Testimony, House Committee on Judiciary, HB 2849, Apr 3, 2019 (statement of Legislative Director of Oregon Criminal Defense Lawyers Association Mary Sofia in support of HB 2849 and -2, -3, -4, and -6 amendments). Likewise, Judge Nan Waller, speaking on behalf of the judiciary in support of HB 2849, explained that the standards for removal of a child from the care of a parent "should at least be on par with what we as judges do every day, which is issue search warrants and authorize them." Video Recording, House Committee on Judiciary, HB 2849, Apr 3, 2019, at 00:53:50 (testimony of Judge Nan Waller in support of HB 2849), https://olis.oregonlegislature.gov (accessed September 22, 2023).

This legislative history supports parents' argument that the protective custody order is provisional. It is an authorization that is not required to be executed and that may not ever be executed. As noted above, a protective custody order authorizes a police officer, a counselor, or an employee of DHS to remove a child from a caregiver in order to protect the child or ensure the child's safety until juvenile court proceedings are initiated, *W. C. T.*, 314 Or App at 759 (citing ORS 419B.150(6))—it does not itself provide for custody. *See* OAR 413-015-0455(1) - (2) (explaining that "[t]he CPS worker, in consultation with the CPS supervisor, must consider whether protective custody is necessary to manage child safety prior to the shelter hearing.").

That legislative history shows that, in providing for increased judicial supervision through the use of protective custody orders, the legislature did not intend to create a full-fledged—or even partially fledged—child custody proceeding that yields a child custody determination sufficient to justify exclusive, continuing jurisdiction.

Our understanding of the role of protective custody orders and importance of procedural due process—notice and opportunity to be heard—under the UCCJEA is further supported by decisions of other courts that have adopted the uniform act. We look to them because, as Oregon's Supreme Court recently explained, "under ORS 109.831, we are directed to consider 'the need to promote uniformity of the law with respect to its subject matter among states that enact it.'" *J. S.*, 368 Or at 528. "Accordingly, we consider 'instructive case law from other uniform-law jurisdictions.'" *Id.* (quoting *Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 363 n 2, 811 P2d 627 (1991)). The matter has not been often litigated, though many states have a protective custody order analog.

Cases from other states acknowledge that notice and an opportunity to be heard must be given before a child custody determination under the UCCJEA can be made. In *Arkansas Dep't of Human Servs v. Cox*, the Arkansas Supreme Court determined that a "Take-into-Custody" order issued by a Florida court was not a child custody determination that could be enforced pursuant to the UCCJEA due, among other reasons, to the lack of notice and opportunity to be heard. 349 Ark 205, 216, 82 SW3d 806, 814 (2002).[8] In *W. M. v. V. A.*, a California appeals court reversed a trial court determination that Belarus had established exclusive continuing jurisdiction over the child custody determinations involving the father's child, because Belarus did not provide the father with notice and jurisdiction was not established in conformity with UCCJEA standards. 30 Cal App 5th 64, 68, 241 Cal Rptr 3d 170, 172 (2018). That case considered notice to be jurisdictional under California's UCCJEA. *Id.*

---

[8] For this and other reasons, the *Cox* court held, the Florida grant of the "Take-into-Custody" order did not amount to a simultaneous child custody proceeding that deprived an Arkansas probate court of jurisdiction. *Cox*, 349 Ark at 216, 82 SW3d at 814.

at 73, 241 Cal Rptr 3d at 175 ("Adequate notice is always a factor fundamental to jurisdiction, and custody proceedings under the UCCJEA are no exception to that principle.").

So, while we recognize that the definition of "child custody determination" under the UCCJEA is sweeping in scope, we nevertheless conclude that it does not encompass the issuance of protective custody orders. Such an order is a conditional grant of authority to remove in the future based on preliminary facts subject to further inquiry by the person the court is authorizing to make a removal if necessary. It is not a vehicle by which an initial determination of custody is made pursuant to the UCCJEA and, therefore, it cannot establish exclusive continuing jurisdiction.

We thus reject DHS's view that the protective custody order is the "initial child custody determination" that gave Oregon courts continuing and exclusive jurisdiction over all child custody proceedings involving J. ORS 109.741(1)(a).

2.  *The commencement of the proceeding*

With the understanding that the "initial child custody determination" occurred after the filing of the petition, we return to the broader issue: whether the juvenile court had jurisdiction to make an "initial child custody determination" because Oregon was J's home state "on the date of the commencement of the proceeding." ORS 109.741(1)(a). "Commencement" means "the filing of the *first pleading* in a proceeding." ORS 109.704(5) (emphasis added); *see also* UCCJEA § 102(5).

As an alternative to its argument that the protective custody order is the initial child custody determination, we understand DHS to argue that the "date of the commencement of the proceeding," ORS 109.741(1)(a), was the date when the declaration in support of the protective custody order was filed (in April 2021), because the declaration was "the first pleading in [the] proceeding." ORS 109.704(5) (defining "commencement"); *see also* UCCJEA § 102(5) (same).

To evaluate that argument, we must first know what proceeding we are talking about. As a textual matter,

we understand ORS 109.741(1)(a)'s reference to "the proceeding" to mean the proceeding in which "the initial child custody determination" is made. In light of our conclusion that the protective custody order was not an "initial child custody determination" giving rise to home-state jurisdiction under ORS 109.741(1)(a), the only remaining way that the declaration could have commenced the relevant proceeding is if the declaration was "the first pleading" in the *dependency* proceeding.

On that point—whether the declaration was the first pleading in the dependency proceeding—parents argue that the protective custody declaration and order are not a part of the dependency proceeding because the declaration and order represent an earlier step by the agency to gain necessary court permission to remove a child, before the physical custody of the child is at issue in any proceeding between DHS and the parents. Therefore, they reason, the declaration that prompts the protective custody order cannot commence the dependency proceeding; instead, they argue, the juvenile code dictates how dependency proceedings are commenced and shows that the first pleading in a dependency proceeding is the dependency petition.

DHS responds that when the term "pleading" is liberally construed with a view of substantial justice toward the parties as ORS 419B.857(1) requires, a declaration can constitute a pleading, because it sets out allegations of abuse and/or neglect.

The UCCJEA defines "child custody proceeding" as "a proceeding in which legal custody, physical custody, parenting time or visitation with respect to a child is an issue." ORS 109.704(4); *see also* UCCJEA § 102(4). The definition includes "a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, parentage, termination of parental rights and protection from domestic violence in which the issue [of child custody] may appear." *Id*. While that definition is comprehensive, it is not particularly helpful for current purposes. The question we must answer is not addressed by the definition: Are the declaration and the protective custody order part of the dependency proceeding, such that the filing of the declaration is the filing of the first

pleading in the dependency proceeding? As explained below, we conclude that they are not.

The parties disagree about whether a declaration can qualify as a "pleading" in any proceeding. We are skeptical that it can, as no party is able to respond to it. However, we need only determine whether the declaration in support of a protective custody order was the first pleading in the dependency proceeding. The parties cite slightly different definitions of "pleading," but both proffered definitions recognize that a central function of a pleading is to set forth—bring to the court's and other parties' notice—issues that will be litigated in the proceeding that follows. *See Black's Law Dictionary* 1139 (10th ed 2014) (defining "pleading" as a "formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses"); *Black's Law Dictionary* 1152 (6th ed 1990) (defining "pleading" as the "formal allegations by the parties to a lawsuit of their respective claims and defenses, with the intended purpose being to provide notice of what is to be expected at trial"); *see also Webster's Third New Int'l Dictionary* 1738 (unabridged ed 2002) (defining "pleading" as "one of the successive statements now usually written by which the plaintiff sets forth his cause and claim and the defendant his defense : the formal allegations and counter allegations made by plaintiff and defendant or by prosecutor and accused in an action or proceeding until issue is joined").

Those definitions indicate that the declaration is not the first pleading in a dependency proceeding. A declaration setting out "[w]hy protective custody is necessary and the least restrictive means available" to protect the child from specified types of harm and why protective custody is in the child's best interest does not frame the issues that will be litigated in the dependency proceeding. ORS 419B.150(5). Moreover, in terms of providing notice to other parties, it is particularly ineffective, given that no other party receives notice of it until the court has decided the only question that it raises—whether protective custody is necessary and in the child's best interest. Even then, the order is designed to keep the child in the home by other safe means, if possible, at the time of potential execution.

Moreover, as explained above, a declaration in support of a protective custody order is neither necessary nor sufficient to commence dependency proceedings. A court need not be involved at all in a department worker or police officer's decision to take a child into protective custody. As discussed above, under ORS 419B.150(4)(a), a child can be taken into protective custody without a court order when there is reasonable cause to believe that there is an "imminent" threat of severe harm or where there is an "imminent" threat that "the child's parent or guardian will cause the child to be beyond the reach of the juvenile court before the court can order that the child be taken into protective custody" via protective custody order. Further, dependency proceedings can begin without removing the child at all if the family needs the assistance of the court and the agency to keep the child safe in the long term, but the risk to the child can be mitigated by a voluntary in-home safety plan until the dependency trial.

As to sufficiency, the two ways to begin dependency proceedings are to file and serve a petition pursuant to ORS 419B.809 to 419B.815, or to *remove the child* (pursuant to a protective custody order under ORS 419B.150(5) or otherwise according to ORS 419B.150(4)), at which point jurisdiction will attach but a petition must be filed within 24 judicial hours so that a child-custody determination can be made at the shelter hearing. ORS 419B.157. An issued but unexecuted protective custody order does not trigger the juvenile court's jurisdiction or commence any time period during which a petition must be filed. The petition is necessary and sufficient in all cases to begin a dependency case; the protective custody order is neither necessary in all cases nor sufficient in any.

Finally, the structure of the protective custody order statute also demonstrates that the legislature does not understand the declaration to be the "first pleading" in a dependency proceeding. The UCCJEA requires certain information to be included in the first pleading in a child custody proceeding, and that information is not required in a declaration in support of a protective custody order. *Compare* ORS 109.767 (requiring a variety of information

in a "first pleading") *with* ORS 419B.150 (requiring hardly any of that information in a declaration in support of a protective custody order) *and* ORS 419B.809 (requiring all of the ORS 109.767 information to be included in the petition). The context suggests that the legislature does not intend a declaration in support of a protective custody order to be the first pleading in a dependency proceeding.

It is true, as DHS argues, that failure to provide the required information is not a jurisdictional defect which would disqualify a pleading; the information may be provided later.[9] But what we find significant is that ORS 419B.150 does not require the party seeking the order to furnish the court with the jurisdictional information required under ORS 109.767(1). That is, the legislature did not intend the declaration established in ORS 419B.150 to be a first pleading under ORS 109.767(1).

We have concluded that the protective custody order was not an "initial child custody determination" that gave Oregon continuing and exclusive home-state jurisdiction, and that the filing of the declaration in support of the protective custody order was not the "commencement" of the dependency proceeding. ORS 109.741(1)(a). Instead, the initial child custody determination took place after the dependency petition was filed, and the filing of that petition was the commencement of the dependency proceeding. Because Oregon was not J's home state "on the date of the commencement of the proceeding,"—March 2022, when the petition was filed—Oregon does not have home-state jurisdiction. ORS 109.741(1)(a). Accordingly, we remand for the juvenile court to determine whether there was any alternative basis for the court's jurisdiction under the UCCJEA.

Vacated and remanded.

---

[9] Under ORS 109.767(2), "[i]f the information required by subsection (1) of this section is not furnished, the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished."