No. 360            April 23, 2025            73

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. R. E.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. R. E.,
*Appellant.*

Curry County Circuit Court
24JU03353; A185861

Cynthia Lynnae Beaman, Judge.

Submitted March 21, 2025.

George W. Kelly filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Robert C. Hansler, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Jacquot, Judge, and Kistler, Senior Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

The juvenile court asserted dependency jurisdiction over 12-year-old Indian child, on the basis that mother's substance abuse endangers child and causes an inability to meet her needs, putting child at substantial risk of harm. Child appeals, contesting each of the court's jurisdictional findings and the exercise of jurisdiction under the totality of the circumstances in three assignments of error. After review of the record, we affirm.

Child does not request *de novo* review, and this is not an exceptional case warranting such review. *See Dept. of Human Services v. C. M.*, 284 Or App 521, 522, 392 P3d 820 (2017) (declining to review *de novo* because "this is not an exceptional case"); *see also* ORAP 5.40(8)(c) (we exercise our discretion to review *de novo* only in exceptional cases). Multiple requirements—higher than those generally applicable—apply to the dependency jurisdiction inquiry for a child protected by the federal Indian Child Welfare Act (ICWA), 25 USC sections 1901 to 1963, and our state's analogous statutes (ORICWA),[1] ORS 419B.600 to 419B.665.[2]

---

[1] ICWA and ORICWA require proof by clear and convincing evidence, notice to and consultation with the child's tribe, active efforts, qualified expert witness testimony, a finding of imminent physical damage before the child can be removed from the parent or Indian caregiver, and provide for removal to tribal court, among other provisions. 25 USC §§ 1901 - 1963; ORS 419B.600 - 419B.665. "It is the policy of the State of Oregon to protect the health and safety of Indian children and the stability and security of Indian tribes and families by promoting practices designed to prevent the removal of Indian children from their families[.]" ORS 419B.600. Our state acknowledges the detrimental historic policies that contributed to "an alarmingly high percentage of Indian families [being] broken up by the removal, often unwarranted, of their children[.]" OAR 413-115-0010.

[2] ORS 419B.310 sets out the procedures for dependency jurisdictional hearings. It incorporates or requires higher standards than ICWA. *See* 25 USC §§ 1901 - 1963. ORS 419B.310 provides, in part:

"(3)(a) Except as otherwise provided in this section, the facts alleged in the petition showing the child to be within the jurisdiction of the court * * * unless admitted, must be established:

"* * * * *

"(B) If the child is an Indian child, by clear and convincing competent evidence.

"(b) The evidence under paragraph (a)(B) of this section must:

"(A) Include testimony of one or more qualified expert witnesses under ORS 419B.642 (Qualified expert witness), demonstrating that the Indian child's continued custody by the child's parent or custody by the child's Indian

Unless jurisdictional facts are admitted, ORS 419B.310 specifies that "clear and convincing competent evidence" is required to bring an Indian child under dependency jurisdiction.

The parties disagree about our standard of review when we evaluate findings made by the juvenile court in cases subject to ORICWA for factual findings made for proof of conditions and circumstances referenced by ORS 419B.100(1)(c). Child argues we should determine anew whether the facts in the record meet the "clear and convincing" evidence standard, per ORS 419B.310(3)(a)(B). The department argues that "the question on appeal is whether the evidence was legally sufficient to permit any rational juvenile court to determine that [child] was within its jurisdiction[.]" For two reasons, we agree with the state concerning the appropriate standard of review, and we apply that standard.

First, we have previously determined that juvenile court factual findings are entitled to deference in the ICWA dependency jurisdictional context. *Dept. of Human Services v. A. C. S. G.*, 328 Or App 191, 196, 536 P3d 1075 (2023) ("[W]e review the court's findings of fact regarding what [the department] did or did not do for any evidence."). Second, we have previously given effect to the clear-and-convincing evidentiary standard in other contexts by applying a similar standard to the one the state suggests: sufficient evidence in the record for a rational factfinder to find that it is highly likely that the fact in question exists. *State v. S. E. R.*, 297 Or App 121, 122, 441 P3d 254 (2019) ("Because the standard of proof in a civil commitment case is the clear-and-convincing-evidence standard, the evidence supporting

---

custodian is likely to result in serious emotional or physical damage to the Indian child; and

"(B) Show a causal relationship between the particular conditions in the Indian child's home and the likelihood that the continued custody of the Indian child by the child's parent or custody by the child's Indian custodian will result in serious emotional or physical damage to the particular Indian child who is the subject of the child custody proceeding ***. Evidence that shows the existence of community or family poverty, isolation, single parenthood, custodian age, crowded or inadequate housing, substance abuse or non-conforming social behavior does not, by itself, establish a causal relationship as required by this paragraph."

commitment must be sufficient to permit the rational conclusion that it is highly probable that the person poses a danger to self or others." (Citing *State v. S. R. J.*, 281 Or App 741, 748, 386 P3d 99 (2016).)). Consistently, we also defer to the juvenile court's credibility findings, which were adverse to mother in this case. *Dept. of Human Services v. A. J. G.*, 304 Or App 221, 230, 465 P3d 293, *rev den*, 366 Or 826 (2020).

Moreover, ICWA cases mandate findings in addition to the jurisdictional requirements in ORS 419B.100(1)(c). We evaluate those findings in the light most favorable to the juvenile court's disposition and assess whether, when so viewed, the totality of evidence in the record was legally sufficient to permit any rational juvenile court to find that it is highly likely that facts exist indicating that continued custody by the child's parent is likely to result in serious emotional or physical damage to the Indian child. ORS 419B.310(3)(b)(B).

In child's first assignment of error, she argues that the court erred when it determined "mother's substance abuse has created conditions that interfere with her ability to be a safe parent." We have reviewed the record, and we conclude that the juvenile court did not err. As articulated by the juvenile court, evidence to support that determination includes but is not limited to: mother's long-term daily fentanyl use; her acknowledgment that fentanyl is dangerous, but that she believes she has it "under control" and that her high tolerance will protect her from overdosing; and the presence of fentanyl, nor-fentanyl, and methamphetamine found in a hair follicle test of child, which an expert testified was likely due to environmental exposure or transfer from mother to child through physical contact. Mother and child consistently affirmed that there was no drug use around child, but the juvenile court was skeptical of that testimony, and the court could draw a permissible inference that mother's trust of child to avoid contact with any drugs or residue was dangerous for child. The record also shows housing instability, due at least in part, to mother's substance use; mother, her partner, and child have recently lived in vehicles, at times including an RV, in pull-outs along the road. Child's living arrangements and care have been disrupted

due to drug-related police contacts and mother's arrest while she was caring for child.

In her second assignment, child argues that the court erred in determining that child "has needs that mother has been unable to meet and which creates a substantial risk of harm to [child]." In addition to the basic needs that all 12-year-olds have for food, shelter, and medical care, child has some heightened needs. The juvenile court relied on her behavioral problems at school, juvenile delinquency involvement, low IQ, academic struggles, and apathy about school as evidence that there had been impacts to child as a result of mother's conduct. There were several instances where mother's incarceration prevented attendance at meetings and appointments for child. Mother supported and encouraged some of child's problematic behaviors. Mother testified about the department's involvement throughout child's life, about not having a primary doctor for child, and about relying on emergency room care. There was evidence that child sometimes slept in a car alone next to a separate car where mother used drugs. In summary, evidence in the record is sufficient to support, by clear and convincing evidence, the juvenile court's finding about child's needs that mother has been unable to meet and the related substantial risk of harm to child.

Finally, child argues that the juvenile court erred in exercising jurisdiction. Under ORS 419B.100(1)(c), dependency jurisdiction is appropriate when the child's circumstances "give rise to a threat of serious loss or injury." *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011). Dependency jurisdiction is not warranted for a child protected by ORICWA unless clear and convincing evidence including "testimony of one or more qualified expert witnesses * * * demonstrat[es] that the Indian child's continued custody by the child's parent * * * is likely to result in *serious emotional or physical damage* to the Indian child" and that there is a "causal relationship between the particular conditions" in the home and a likelihood that remaining in the parent's custody will result in such serious damage. ORS 419B.310(3)(b) (emphasis added).

Child argues that there is not a nexus—in other words, the requisite "causal relationship"—between generalizations articulated by the court about dangers of drug use, fentanyl or opioids, and this family's particular situation. That argument presents a closer call. Mother's drug use has contributed to her unavailability to assist child with her needs on important occasions, such as evaluations necessary for child's individualized education plan and juvenile probation. Child was close enough to fentanyl to have it appear in her hair sample at four times over the confirmation limit. Additionally, mother did not think she could get her partner to stop using and stated in front of child that she would have a difficult time choosing to leave her partner in order to attain sobriety or access more stable housing and parent child alone. Mother did not want treatment and did not think that anything about their situation needed to change. The juvenile court inferred that child's behavioral problems were linked to a lack of attention from mother. This record contains clear and convincing evidence of facts that permit the inference that continued custody by mother would subject child to imminent serious emotional or physical damage.

Although 419B.310(3)(b)(B), recognizing systemic "misunderstanding of tribal customs," expressly prohibits taking dependency jurisdiction over an Indian child based *solely* on "family poverty, isolation, single parenthood, \*\*\* inadequate housing, substance abuse or nonconforming social behavior," this particular record includes evidence beyond those bare factors.[3] *See Dept. of Human Services v. M. P.,*

---

[3] The ICWA regulations set out the federal standards of evidence for a foster care placement of an Indian child. They require clear and convincing evidence, testimony of at least one qualified expert witness, and a causal relationship between "the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage" to the child, and further include that:

"Without a causal relationship identified in paragraph (c) of this section, evidence that shows only the existence of community or family poverty, isolation, single parenthood, custodian age, crowded or inadequate housing, substance abuse, or nonconforming social behavior does not by itself constitute clear and convincing evidence or evidence beyond a reasonable doubt that continued custody is likely to result in serious emotional or physical damage to the child."

25 CFR § 23.121.

328 Or App 502, 509 n 2, 537 P3d 593 (2023) (ORICWA requires "heightened removal standards" for Indian children due to historical discrimination and "misunderstanding of tribal customs"). Child's tribe, CASA, and the tribal expert all agreed that a nexus exists and that mother's conduct subjected child to serious emotional or physical damage as required by ORS 419B.310. Evidence in the record shows that child's behavior and school engagement have improved while she has been out of mother's care and in the care of a tribal family member. Particularly given that mother repeatedly minimized the risks posed to herself and her child through continued, daily fentanyl use, there is evidence to support the court's inference that child had already experienced harm as a result of her condition and circumstances and that she was in danger of "serious emotional and physical damage" in the absence of dependency jurisdiction. The tribal expert, who would know if mother's behavior constituted traditional tribal childrearing practices, testified that he was very concerned for child's safety if returned to mother. We conclude the juvenile court did not err.

Affirmed.

---

The Revised Bureau of Indian Affairs Guidelines explain the relationship between the requirement of expert testimony and the required causation link between the conditions in the home and the physical or emotional damage to the Indian child requirement. Experts are required to have specific knowledge of the prevailing social and cultural standards and child-rearing practices with the child's tribe. The guidelines state,

> "In passing ICWA, Congress wanted to make sure that Indian child-welfare determinations are not based on a 'white, middle-class standard which, in many cases, forecloses placement with [an] Indian family.' Congress recognized that States have failed to recognize the essential Tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families. Accordingly, expert testimony presented to State courts should reflect and be informed by those cultural and social standards. This ensures that relevant cultural information is provided to the court and that the expert testimony is contextualized within the Tribe's social and cultural standards. Thus, the question of whether the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child is one that should be examined in the context of the prevailing cultural and social standards of the Indian child's tribe."

U. S. Department of the Interior, Bureau of Indian Affairs, *Guidelines for Implementing the Indian Child Welfare Act* 54 (Dec 2016), https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf (accessed Apr 16, 2025) (internal citations omitted).